**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15

MICHAEL GAREDAKIS, et al.,

       Plaintiffs,

    v.

BRENTWOOD UNION SCHOOL
DISTRICT, et al.,

       Defendants.

_____/

No. C 14-4799 PJH

**ORDER GRANTING MOTION TO
DISMISS; ORDER DENYING MOTION
TO STRIKE**

16   Defendants' motion to dismiss the first cause of action alleged in the second

17 amended complaint ("SAC"), and to strike certain allegations in the SAC, came on for

18 hearing before this court on April 8, 2015.  Plaintiffs appeared by their counsel Todd Boley

19 and Zoya Yarnyka; defendant Dina Holder appeared by her counsel Eric Bengston; and the

20 remaining defendants appeared by their counsel Christopher Vincent.  Having read the

21 parties' papers and carefully considered their arguments and the relevant legal authority,

22 the court hereby GRANTS the motion to dismiss and DENIES the motion to strike.

23   **BACKGROUND**

24   Plaintiffs are six minors who were formerly enrolled at Loma Vista Elementary

25 School ("Loma Vista") and/or Kray Elementary School ("Kray"), within the Brentwood Union

26 School District ("BUSD") in Brentwood, California, and their guardians ad litem and parents.

27 Listed as plaintiffs in the SAC are Michael Garedakis, Tamara Garedakis, and M.G., a

28 minor by and through his guardian ad litem Michael Garedakis; Yolanda Jackson and A.G.,

United States District Court
For the Northern District of California

1   a minor by and through her guardian ad litem Yolanda Jackson; Lawrence Gullo, Danielle

2   Gullo, and B.G., a minor, by and through his guardian ad litem Danielle Gullo; Kathryn

3   McGuire and M.R., a minor, by and through his guardian ad litem Kathryn McGuire; Viviana

4   Rose and B.R., a minor, by and through his guardian ad litem Viviana Rose; and Ahmad

5   Razaqi, Dania Razaqi, and E.R., a minor, by and through his guardian ad litem Dania

6   Razaqi.

7   　　　　Defendants are BUSD, Dina Holder ("Holder" – formerly employed by BUSD as a

8   teacher at Loma Vista until May 2010, and then at Kray); Lauri James ("James" – former

9   principal of Loma Vista); Jean Anthony ("Anthony" – former Director of Special Education at

10   BUSD); Margo Olson ("Olson" – Director of Special Education and Interventions at BUSD);

11   Margaret Kruse ("Kruse" – Assistant Superintendent at BUSD); Merrill Grant ("Grant" –

12   former Superintendent at BUSD); and Brian Jones ("Jones" –  principal of Kray).

13   Plaintiffs allege that Holder subjected the minor plaintiffs – each of whom has been

14   diagnosed with autism, Down's syndrome, or some other developmental disorder – to

15   verbal and physical abuse while they were in her classroom.  At the time of the alleged

16   abuse, the minor plaintiffs ranged in age from three to about six years.  Some were

17   nonverbal and all had difficulties with communication.

18   　　　　Holder was a special education teacher in BUSD schools from 1996 to 2012.

19   Plaintiffs assert that as early as 2008, defendants James, Jones, Olson, Anthony, Kruse,

20   and Grant were aware that Holder was subjecting students in her classrooms to physical

21   and verbal abuse.  Holder eventually resigned from BUSD as part of terms of a settlement

22   reached in a lawsuit filed in this court, Phelan v. Holder, C-12-0465 LB (N.D. Cal.) ("the

23   Phelan action").  Holder's teaching credentials were revoked by the California Commission

24   on Teacher Credentialing in February 2013.

25   　　　　Plaintiffs filed the original complaint in this case on October 28, 2014.  On December

26   15, 2014, plaintiffs filed the first amended complaint ("FAC") pursuant to stipulation.  On

27   January 30, 2015, plaintiffs filed the second amended complaint ("SAC"), apparently

28   pursuant to an informal agreement among the parties.

United States District Court

For the Northern District of California

1    The SAC includes a lengthy account of a series of incidents involving special

2    education students during the period 2008-2010, including allegations regarding three

3    students who are not plaintiffs in the present lawsuit – LL, who was a student in Holder's

4    class during the 2007-2008 school year, see SAC ¶¶ 38-43; KG, who was a student in

5    Holder's class during a portion of the 2008-2009 school year, see SAC ¶¶ 44-47; and JP,

6    who was a student in Holder's class in 2010, see SAC ¶¶ 54-67.[1]

7    As for the minors who are plaintiffs in the present action, plaintiffs allege that MG

8    (diagnosed with Autism-nonverbal), who was in Holder's class during the 2008-2009 school

9    year, came home with red marks on his arms several times, became agitated and reluctant

10   to go to school, and began to throw tantrums after being enrolled in Holder's classroom.

11   Plaintiffs assert further that MG became "sexually aroused by the sight of toes" as a result

12   of a "game" played by the adults in Holder's classroom when he was 3 or 4 years old, and

13   that he remains "fixated on feet," which plaintiffs claim makes it impossible for his parents

14   to take him into public places.  SAC ¶ 68-75.

15   Plaintiffs allege that AG (diagnosed with Downs Syndrome), who was in Holder's

16   class during 2008-2009, 2010-2011, and 2011-2013 school years, became unhappy and

17   withdrawn after being placed in Holder's class, and developed imaginary friends and began

18   seeing monsters, and later told her mother that Holder was "mean" and "hit kids."  SAC

19   ¶¶ 79-88.

20   Plaintiffs assert that BG (diagnosed with Autism Spectrum-like symptoms, with

21   speech delays), who was in Holder's class in 2009-2011, became more sensitive to yelling

22   and more aggressive after starting in Holder's classroom, hitting not only himself but also

23   others.  He also allegedly became prone to lying on the floor and hiding his head, and later

24   communicated that Holder would yell at the class and tell them to shut up.  SAC ¶¶ 91-95.

25   Plaintiffs allege that MR (diagnosed with Autism Spectrum), who was in Holder's

26

27   _____

28   [1] JP and his parents were among the plaintiffs in the Phelan action.  LL and his parents and KG and his parents were among the plaintiffs in another lawsuit, related to the Phelan action – Guerrero v. Brentwood Union School District, C-13-3873 LB.

1  class in 2008-2010, arrived home from school with a large bruise on his arm, and at other

2  times had "bruises and scratches."  He also allegedly became more aggressive (including

3  towards family members) and started having nightmares after starting in Holder's

4  classroom, and started diving under the table whenever he heard a loud noise, and that he

5  "observed other children being verbally and physically abused by Holder."  SAC ¶¶ 98-104.

6      Plaintiffs assert that BR (diagnosed with Pervasive Developmental Delay and

7  Autism), who was in Holder's class for the 2010-2011 school year, had done well in

8  kindergarten with a different teacher.  However, after starting first grade in Holder's

9  classroom, he began acting fearful and aggressive, eventually telling his mother that Holder

10  had "grabbed him at the shoulder and neck and shoved him into a chair because he wasn't

11  listening," and on other occasions arrived home with large bruises on his arm.  SAC ¶¶

12  107-113.

13      Finally, plaintiffs allege that ER (diagnosed with Autism with delays in speaking and

14  making eye contact), who was in Holder's class from December 2011 to April 2012, began

15  exhibiting behavioral changes almost immediately after being placed in Holder's classroom.

16  He allegedly "observed other children being subjected to physical and verbal abuse by

17  Holder," eventually told his mother that Holder had screamed at him and called him

18  "stupid," and also became more aggressive and sad and lost language skills.  SAC ¶¶ 114-

19  121.

20      Plaintiffs also assert that Holder, James, Jones, Olson, Kennedy, Kruse, and Grant

21  "[i]ntentionally interfer[ed] with the parent-child relationship by inflicting abuse on and

22  concealing information regarding the physical and emotional trauma inflicted on" the minor

23  plaintiffs.  SAC ¶ 125.  They allege that "due to the abuse inflicted by Holder, the minor

24  [p]lainiffs have lost trust in their parents, and this bond is now irreparably damaged."  Id.

25  They assert that "[b]ecause of their age, the minor [p]laintiffs believe that the parents were

26  aware of the abusive conditions in the classroom and that their parents knowingly

27  subjected them to the abuse.  As a result, the trust necessary for a healthy parent-child

28  relationship has been severely undermined and will impede the parents' ability to provide

4

1  guidance and direction to their children."  Id.  Plaintiffs allege that the minor plaintiffs

2  reacted to "the trauma they endured" by exhibiting various behavioral symptoms, including

3  "aggression, rage, anxiety, and hypervigilance" that continues to "interfere with the parents'

4  ability to maintain an emotional bond with their children."  Id.

5      In the SAC, plaintiffs allege causes of action for (1) violation of the Fourth and

6  Fourteenth Amendments to the United States Constitution, under 42 U.S.C. § 1983;

7  (2) discrimination in violation of Title II of the Americans with Disabilities Act of 1990, 42

8  U.S.C. § 12131, et seq.; (3) discrimination in violation of § 504 of the Rehabilitation Act of

9  1973, 29 U.S.C. § 701, et seq.; (4) violation of California Civil Code § 52.1; (5) battery;

10  (6) intentional infliction of emotional distress; (7) negligence; (8) negligent supervision;

11  (9) violation of mandatory duty to report suspected child abuse, imposed under California

12  Penal Code § 11166; (10) violation of California Civil Code § 51; and (11) violation of

13  California Education Code § 220.

14      Defendants seek an order dismissing the first cause of action for violation of

15  constitutional rights, and also seek an order striking certain allegations in the SAC.

16                                              **DISCUSSION**

17  A.     Motion to Dismiss

18         1.     Legal standard

19      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

20  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

21  1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the complaint,

22  although the court can also consider a document on which the complaint relies if the

23  document is central to the claims asserted in the complaint, and no party questions the

24  authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).

25      To survive a motion to dismiss for failure to state a claim, a complaint generally must

26  satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8,

27  which requires that a complaint include a "short and plain statement of the claim showing

28  that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

2    plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

3    a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  While

4    the court is to accept as true all the factual allegations in the complaint, legally conclusory

5    statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v.

6    Iqbal, 556 U.S. 662, 678–79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049,

7    1055 (9th Cir. 2008).

8    The allegations in the complaint "must be enough to raise a right to relief above the

9    speculative level[,]" and a motion to dismiss should be granted if the complaint does not

10   proffer enough facts to state a claim for relief that is plausible on its face.  Bell Atlantic

11   Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  A

12   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

13   draw the reasonable inference that the defendant is liable for the misconduct alleged."

14   Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the

15   court to infer more than the mere possibility of misconduct, the complaint has alleged – but

16   it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  Where dismissal is

17   warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved

18   by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

19       2.    Defendants' motion

20   Defendants seek an order dismissing the first cause of action, which is brought by

21   the minor plaintiffs M.G., A.G., B.G., M.R., B.R., and E.R. against Holder, James, Jones,

22   Olson, Anthony, Kruse, and Grant.  At least part of the first cause of action is also asserted

23   by the parents of the minor plaintiffs.

24   Plaintiffs assert claims under the Fourth and Fourteenth Amendments.  In the Fourth

25   Amendment portion of the claim, plaintiffs allege that Holder used excessive force against

26   the minor plaintiffs; and that James, Jones, Olson, Anthony, Kruse, and Grant "failed to act"

27   in response to allegations of serious child abuse by Holder, and "acted with deliberate

28   indifference" to the risk of harm posed by Holder's actions against the minor plaintiffs.  In

United States District Court

For the Northern District of California

1    the Fourteenth Amendment portion of the claim, plaintiffs allege that Holder, James, Olson,

2    Anthony, Kruse, and Grant violated the due process rights of the minor plaintiffs and their

3    parents, by intentionally interfering with the parent-child relationship, and with the plaintiffs'

4    rights to provide and receive nurture, support, and comfort regarding highly traumatic

5    events.

6           Defendants argue that the excessive force portion of the claim should be dismissed

7    for failure to state a claim because plaintiffs have not alleged that an actionable search or

8    seizure occurred.  They contend that the SAC does not adequately allege that Holder

9    engaged in an unlawful seizure, because there are no facts showing that Holder's actions

10   sufficiently limited the minor plaintiffs' freedom of movement, and no allegations showing

11   that any force used resulted in restrictions beyond those inherent in every-day school

12   attendance.  They also assert the allegations against James, Jones, Olson, Anthony,

13   Kruse, and Grant are deficient because plaintiffs allege only that those defendants failed to

14   act, and plead no facts showing that such a failure to act could be considered an unlawful

15   search or seizure.

16          As for the substantive due process portion of the claim, defendants contend that the

17   SAC fails to state a claim because plaintiffs have not identified a sufficient interference with

18   a fundamental right that is actionable under the Fourteenth Amendment, and because the

19   allegations in the SAC do not shock the conscience.  In particular, defendants argue that

20   plaintiffs do not allege any interference with custody sufficient to state a substantive due

21   process claim, and that the alleged violation of the parents' right to care for, comfort, and

22   nurture their children is not an interference with custody, and is not a recognized right that

23   would support a due process claim.  They argue that plaintiffs are attempting to impose a

24   constitutional duty on teachers and school personnel to inform parents of alleged physical

25   and emotional trauma suffered in the classroom, but they assert that no court has found

26   such a duty or a corresponding constitutionally-recognized liberty interest of either a parent

27   or a child.

28          In opposition, plaintiffs contend that the SAC pleads facts showing that Holder

United States District Court
For the Northern District of California

1  violated the minor plaintiffs' rights by subjecting them to daily verbal and physical assaults.

2  They assert generally that Holder "abused" the minor plaintiffs, that the children saw their

3  classmates being "abused," and that Holder has been "observed by numerous persons

4  using unnecessary physical force" (including incidents in which she allegedly kicked,

5  slapped, and shook small children).  Plaintiffs argue further that school and BUSD officials

6  and supervisors were "deliberately indifferent" to the risk of harm to students in Holder's

7  classroom.  They claim that employees and parents reported to supervisors (including the

8  principal and Olson) that Holder was physically abusing students, but nothing was done to

9  prevent further abuse.

10      Plaintiffs also contend that the SAC adequately pleads ample facts in support of their

11  substantive due process claim, including that the minor plaintiffs' interactions with parents

12  and siblings have become more "violent and riddled with conflict."  As examples, they

13  argue that MG's family is still unable to engage in family activities outside the home

14  because of his fixation on women's toes; that AG has detached herself emotionally and has

15  found imaginary friends, "which impedes her interaction with reality;" that BG became "very

16  sensitive" to yelling and began hitting himself and other family members; that MR started

17  hitting family members and diving under the table at the sound of a loud noise; that BR

18  started imagining that "superheroes" would come to his rescue, "which impeded his

19  interaction with reality," and also became aggressive towards family members; and that ER

20  became more aggressive towards his family, especially his younger brother, making

21  interactions difficult.

22      As for defendants' argument that the alleged abuse does not "shock the

23  conscience," plaintiffs respond that official conduct that has the effect of depriving parents

24  of their liberty interest in the companionship and society of their children is by definition

25  something that "shocks the conscience."  Morever, they note, the question whether conduct

26  "shocks the conscience" depends on context, and is fact-dependent.  They claim that the

27  fact that the BUSD employees had knowledge of Holder's prior actions (actions taken

28  towards students who are not plaintiffs in this case), but nevertheless allowed her to

United States District Court

For the Northern District of California

1   continue teaching special-needs children, shows that they were covering up the unlawful

2   conduct, which they believe in itself shocks the conscience.

3       The court finds that the motion must be GRANTED.  As a general matter, the

4   allegations as to the minor plaintiffs are too vague and ambiguous to support a

5   constitutional claim.  While the SAC describes in great detail the abusive actions taken by

6   Holder during the period 2007-2010 against three students (LL, KG, and JP), who are not

7   plaintiffs in this action, see SAC ¶¶ 38-64, the allegations regarding the minor plaintiffs who

8   are named in this case are insufficient to state a claim.

9       It is not entirely clear whether the excessive force claim should be analyzed under

10  the Fourth Amendment or under the Due Process Clause of the Fourteenth Amendment.

11  Defendants appear to object only to having a claim for "excessive force" under both the

12  Fourth and Fourteenth Amendments (although they also object to having a Fourth

13  Amendment claim at all because there are no allegations of any search or seizure).

14  Plaintiffs' position is that they intended to assert an excessive force claim under the Fourth

15  Amendment, not the Fourteenth Amendment.

16      The Fourth Amendment proscribes "unreasonable searches and seizures."  U.S.

17  Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995); Franklin v.

18  Foxworth, 31 F.3d 873, 875 (9th Cir. 1994).  Violation of the Fourth Amendment requires an

19  intentional acquisition of physical control.  Brower v. County of Inyo, 489 U.S. 593, 596

20  (1989).  A seizure "in the constitutional sense . . . occurs when there is a restraint on liberty

21  to the degree that a reasonable person would not feel free to leave."  Doe v. Hawai'i Dep't

22  of Educ., 334 F.3d 906, 909 (9th Cir. 2003).  The ultimate test of reasonableness requires

23  the court to balance the governmental interest that justifies the intrusion and the level of

24  intrusion into the privacy of the individual.  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92

25  F.3d 1486, 1496 (9th Cir. 1996).

26      "The consequences of a teacher's force against a student at school are generally

27  analyzed under . . . the Fourth Amendment, although historically courts applied substantive

28  due process analysis . . . ."  Preschooler II v. Clark County School Board of Trustees, 479

United States District Court
For the Northern District of California

F.3d 1175, 1180 (9th Cir. 2007); see also Doe, 334 F.3d at 909.  In Doe, the Ninth Circuit confirmed that a student's Fourth Amendment right to be free from an unreasonable seizure "extends to seizures by or at the direction of school officials."  Id. (citation and quotation omitted).  However, the court also recognized that it might be possible for a school official to use excessive force without actually searching or seizing a student, and held that in such a case, the claim would more appropriately be analyzed under the Fourteenth Amendment's Due Process Clause.  Id.

Four years later, in Preschooler II, the Ninth Circuit reaffirmed that while a claim for excessive force should in the school context should ordinarily be brought under the Fourth Amendment, where there are no allegations of search or seizure, the claim should be brought as a substantive due process claim under the Fourteenth Amendment.  See Preschooler II, 479 F.3d at 1181 n.5.  Claims of excessive force under the Fourteenth Amendment require allegations of "egregious . . . conduct in the form of excessive or brutal use of physical force" that rises to the level of a violation of due process.  See White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990).

In Preschooler II, the parent and guardian of a four-year-old non-verbal, autistic child brought an action alleging causes of action including a Fourth Amendment claim of excessive force.  The plaintiffs asserted that over a seven- or eight-month period, the child's teacher had grabbed the child's hands and slapped him repeatedly, beat him on the head, slammed him into a chair, and forced him to walk without shoes across the asphalt from the school bus to the classroom.  There were also reports of unexplained bruises and scratches on the child's body.  The court held that while the claims regarding unspecified bruising and shoeless walks did not rise to the level of a constitutional violation, the allegations of beating and slamming over an extended period were sufficient to state a claim under the Fourth Amendment.  See id. at 1180-82.

As part of its analysis, the court noted that as early as 1977, the Supreme Court stated that public school students have a constitutional due process right "to be free from, and to obtain judicial relief for, unjustified intrusions on personal security."  Ingraham v.

United States District Court
For the Northern District of California

Wright, 430 U.S. 651, 673 (1977).  Following Ingraham, the Ninth Circuit and other Circuits have held that excessive and unreasonable corporal punishment of public school students violates the students' constitutional rights.  See P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir. 1996) (concluding that teacher's use of excessive force with high school students in 1990 and 1991 violated plaintiffs' substantive due process rights).

In 1989, however, the Supreme Court held in Graham v. Connor that allegations of excessive force in § 1983 actions should be analyzed under a more specific constitutional provision, rather than through generalized notions of substantive due process.  See id., 490 U.S. 386, 394 (1989).  Thus, the Ninth Circuit now typically analyzes excessive force allegations against public school students under the Fourth Amendment.  Preschooler II, 479 F.3d at 1182 (citing Doe, 334 F.3d at 908, 909).

In this context, the court in Preschooler II observed that

> [i]n light of the clear constitutional prohibition of excessive physical abuse of schoolchildren, and the heightened protections for disabled pupils, no reasonable special education teacher would believe that it is lawful to force a seriously disabled four year old child to beat himself or to violently throw or slam him.  Existing law plainly prohibits excessive hitting, dragging or throwing of public school children.

Id. at 1182 (citations omitted).

Whether brought under the Fourth or the Fourteenth Amendment, the excessive force claim fails to state a claim.  The Fourth Amendment portion of the first cause of action alleges excessive force, but the facts alleged do not show either a search or a seizure of any of the minor plaintiffs.  Nor do the facts support a Fourteenth Amendment excessive force claim.  The SAC does not allege facts showing that any defendant other than Holder used excessive force, and as to Holder, it does not clearly allege facts showing that she used excessive force against any of the minor plaintiffs.

The SAC alleges that MG came home with "red marks" on his arms, but there is no allegation that the red marks were caused by something Holder did (as opposed to the actions of someone else in the classroom).  AG told her mother that Holder was "mean" and "hit kids," but there is no allegation that Holder hit AG.  BG communicated that Holder

11

United States District Court

For the Northern District of California

1   "yelled at the class" and told students to "shut up," but there is no allegation that Holder

2   used physical force against BG.  MR arrived home from school with a large bruise on his

3   arm, and at other times had "bruises and scratches," but there is no allegation that Holder

4   herself used physical force against him.[2]  BR claimed that Holder grabbed him and shoved

5   him into a chair on one occasion, and he also came home with bruises, but there is no

6   allegation that it was Holder who caused the bruising.  ER claimed that Holder screamed at

7   him and called him stupid, but there are no allegations that Holder used physical force

8   against him.  See SAC ¶¶ 68-121.

9         As for the school official defendants, plaintiffs assert that they are individually liable

10   for Fourth Amendment violations in that they were deliberately indifferent to the rights of the

11   minor plaintiffs to be free from abuse, and to the rights of the parents to be kept informed

12   about the alleged abuse, knowing that Holder posed a risk to the children, and by not

13   reporting or remediating the alleged abuse when they became aware of it.  The court

14   interprets this as a claim of supervisory liability under § 1983.

15         Vicarious liability is inapplicable to a § 1983 claim.  Thus, a plaintiff must plead that

16   each state official, through the official's own individual actions, has violated the

17   Constitution.  Iqbal, 556 U.S. at 676.  A defendant supervisor may be held liable for his or

18   her own actions if there exists either his/her personal involvement in the constitutional

19   deprivation, or a sufficient causal connection between the supervisor's wrongful conduct

20   and the constitutional violation.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); see

21   also Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, "[s]upervisors can be

22   held liable for: 1) their own culpable action or inaction in the training, supervision, or control

23   of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint

24   is made; or 3) for conduct that showed a reckless or callous indifference to the rights of

25   others."  Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000).

26         Here, however, plaintiffs have not alleged facts showing that Holder or the BUSD

27   ───────────────────

28       [2]  Moreover, claims of unspecified bruises and scratches do not rise to the level of a
recognized constitutional violation.  Preschooler II, 479 F.3d at 1181.

United States District Court

For the Northern District of California

1    defendants violated their constitutional rights.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th

2    Cir. 2011); see also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Thus, any

3    constitutional claim against the BUSD defendants based on failure to act in response to

4    allegations of excessive force must be dismissed as well.

5         As for the Fourteenth Amendment claim of interference with parent-child

6    relationships, the court finds that plaintiffs have not stated a claim.  It is clear that parents

7    and children have a constitutional right "to live together without governmental interference."

8    Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000); see also Santosky v. Kramer, 455

9    U.S. 745, 745 (1982) (fundamental liberty interest of natural parents in care, custody, and

10   management of their child is protected by the Fourteenth Amendment); Lee v. City of Los

11   Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (same).

12        The SAC fails to state a Fourteenth Amendment due process claim for interference

13   with parent-child relationships because the alleged interference does not rise to a level that

14   is subject to protection under substantive due process.  Not all actions that allegedly affect

15   the parent-child relationship can support a constitutional claim.  See E.H. v. Brentwood

16   Union Sch. Dist., 2013 WL 5978008 at *2-3 (N.D. Cal. Nov. 4, 2013).

17        In that case, the plaintiff E.H. was a student at Loma Vista in BUSD.  He was

18   physically restrained after he ran away from school (29 times), and on several other

19   occasions was dragged or pulled into the school office by teachers or aides.  The plaintiff

20   asserted a substantive due process claim based on alleged interference with the parent-

21   child relationship, but the court dismissed the claim, finding that such a right is considered

22   impaired only in situations such as the death of a child, the loss of parental rights, or the

23   loss of contact with or custody of the child.  See id. (citing Kelson v. City of Springfield, 767

24   F.2d 651, 654-55 (9th Cir.1985); Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir.1997)).  The

25   court concluded that because the allegations fell short of asserting termination of parental

26   rights or denial of custody, the claim of interference with parental rights failed to state a

27   claim.

28        In the present case, plaintiffs have cited a number of cases involving substantive

United States District Court
For the Northern District of California

1   due process violations based on impairment of the parent-child relationship, but all those

2   cases involve substantially greater deprivations than the "loss of trust" alleged here.  For

3   example, the deprivation alleged in Ovando v. City of Los Angeles, 92 F.Supp.2d 1011

4   (C.D. Cal. 2000) was based on a police shooting that left the parent imprisoned for three

5   years and "physically and mentally crippled" thereafter.  In Doe v. Dickenson, 615 F.Supp.

6   2d 1002 (D.Ariz. 2009), the plaintiff child was sexually molested while at school.

7          The deprivations and ill effects plaintiffs allege in the SAC are not nearly as severe

8   as those in Ovando and Dickenson.  Nor can they be said to have had a "direct effect."  For

9   example, plaintiffs are not alleging a fatal shooting by the police as in Curnow ex rel.

10  Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir. 1991); Porter v. Osborn, 546 F.32d

11  1131 (9th Cir. 2008); and Wilkinson v. Torres, 610 F.3d 546 (9th Cir. 2010).  Rather,

12  plaintiffs are asserting a more inchoate "loss of trust" resulting from Holder's alleged abuse

13  of the children.  Moreover, the ill effects plaintiffs allege in this case are relatively minor in

14  comparison to some of the cases where courts have found interference with parental

15  relations.  For example, the SAC alleges that one of the minor plaintiffs has "found

16  imaginary friends," that another has become "sensitive to yelling," and that another

17  imagines "superheroes."

18         The court finds that the SAC does not allege facts sufficient to state an actionable

19  claim for interference with parent-child relationships.  Specifically, as in E.H. v. Brentwood,

20  there are no allegations of interference with custody sufficient to state a substantive due

21  process claim of interference with the parent-child relationship.

22  B.     Motion to Strike

23         1.     Legal standard

24         Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken

25  from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

26  scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a 12(f) motion to strike is to

27  avoid the expenditure of time and money that must arise from litigating spurious issues by

28  dispensing with those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft Co., 618

F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted).  In deciding whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is an insufficient defense, or is redundant, immaterial, impertinent, or scandalous.  Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).  When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party."  In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.  Id.

2.    Defendants' motion

In this motion, defendants seek an order striking certain allegations in six paragraphs of the SAC, relating to the criminal charges brought against Holder in February 2011, and the subsequent plea and sentence, and also relating to the 2013 settlement of the Phelan action, pursuant to which Holder agreed to resign from BUSD.  Defendants argue that these allegations are immaterial and unduly prejudicial, and assert in addition, that they are precluded under Federal Rules of Evidence 408 and 410.

First, defendants assert that the allegations relating to the Phelan settlement are irrelevant because references to prior settlements are inadmissible under Rule 408, and are immaterial because they are not necessary to the elements of any of the plaintiffs' claims.  Second, defendants contend that the allegations relating to the criminal charges and the nolo contendere plea are prejudicial and violative of Rule 410 because evidence of a nolo contendere plea is not admissible in any proceeding, and because a jury is likely to draw unwarranted inferences.

In response, plaintiffs argue that the references to the Phelan case and the references to Holder's criminal history are material, not prejudicial, as they support the plaintiffs' theory that defendants had a discriminatory animus against students with

15

United States District Court
For the Northern District of California

1    disabilities (and that they were aware of Holder's propensity for abusing children).  As for

2    defendants' argument that the allegations regarding the <u>Phelan</u> case violate Rule 408,

3    plaintiffs assert that the cases cited by defendants relate to "evidence of settlement

4    negotiations," whereas the references here are to the fact of the <u>Phelan</u> settlement, not to

5    any aspect of the settlement "negotiations."  Moreover, they contend, allegations in a

6    complaint are not "evidence."  Similarly, they argue that the allegations regarding the

7    criminal charges against Holder do not violate Rule 410.  They contend that Rule 410 bars

8    "evidence" of a nolo contendere plea in the same case, but note that the prior plea is not

9    related to the present lawsuit (and is not "evidence").

10           The court finds that the motion must be DENIED.  The materiality of some of the

11   allegations may be slight, but there is nothing here that is not a matter of public knowledge.

12   Most of the cases cited by defendants are from courts outside the Ninth Circuit, and all

13   predate the Ninth Circuit's 2010 decision in <u>Whittlestone</u>, where the court held that the only

14   matters that are subject to being stricken pursuant to a Rule 12(f) motion are matters that

15   can be classified as "an insufficient defense," or as "redundant," "immaterial," "impertinent,"

16   or "scandalous" matter.

17           In addition, Rule 12(f) applies to pleadings, but defendants' arguments here are

18   focused on "evidence."  While defendants may certainly seek an order precluding evidence

19   in the event that the case goes to trial, the Federal Rules of Evidence are not at issue in a

20   motion to strike pleadings under Rule 12(f).

21                                          **CONCLUSION**

22           In accordance with the foregoing, defendants' motion to dismiss the first cause of

23   action under § 1983 is GRANTED.  The SAC does not allege facts showing that any

24   defendant other than Holder used excessive force, and as to Holder, it does not clearly

25   allege facts showing that she used excessive force against any of the minor plaintiffs.

26   While shouting at developmentally disabled children and calling them "stupid" is

27   reprehensible, it does not rise to the level of a constitutional violation.  Thus, the § 1983

28   excessive force claim against Holder must be dismissed.  And having failed to state an

**United States District Court**
For the Northern District of California

1  excessive force claim against Holder, plaintiffs cannot maintain a claim of supervisory

2  liability.  As for the Fourteenth Amendment claim of interference with familial relations, the

3  court finds no allegations of interference with custody sufficient to state a substantive due

4  process claim of interference with the parent-child relationship.

5        As plaintiffs did not provide any information as to how they would amend the

6  complaint, were amendment allowed, the court dismisses this claim without leave to

7  amend.  Should discovery on the battery cause of action result in evidence regarding the

8  use of force by Holder, plaintiffs can seek leave to amend to add the § 1983 claim back into

9  the case.  Defendants' motion to strike is DENIED.

10

11  **IT IS SO ORDERED.**

12  Dated:  May 22, 2015

13  _____
    PHYLLIS J. HAMILTON
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28