1
2
3
4                      UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6
7    MICHAEL GAREDAKIS, et al.,
8                    Plaintiffs,                 Case No.  14-cv-4799-PJH
9         v.                                     **ORDER RE DEFENDANTS' MOTION
                                                 FOR SUMMARY JUDGMENT**
10   BRENTWOOD UNION SCHOOL
     DISTRICT, et al.,
11                  Defendants.
12
13

14        Defendants' motion for summary judgment came on for hearing before this court

15   on April 13, 2016.  Plaintiffs appeared by their counsel Todd Boley and Teresa Li; plaintiff

16   M.R. appeared by his counsel Peter Rukin; the Brentwood defendants appeared by their

17   counsel Claudia Leed, Christopher Vincent, and Louis Leone; and defendant Dina Holder

18   appeared by her counsel Eric Bengston.  Having read the parties' papers and carefully

19   considered their arguments and the relevant legal authority, the court hereby GRANTS

20   the motion in part and DEFERS ruling in part pending further briefing.

21                                **BACKGROUND**

22        This case was brought by six minor plaintiffs and their parents and guardians ad

23   litem – M.G., and his guardians ad litem Michael Garedakis and Tamara Garedakis; A.G.,

24   and her guardian ad litem Yolanda Jackson; B.G., and his guardians ad litem Lawrence

25   Gullo and Danielle Gullo; M.R., and his guardian ad litem Laurie Baca; Kathryn Maguire;

26   B.R., and his guardian ad litem Viviana Rose; and E.R., and his guardians ad litem

27   Ahmad Razaqi and Dania Razaqi.  The minor plaintiffs are all disabled, and some were

28   nonverbal.  Five were diagnosed with autism or autism-spectrum disorder, and one was

1    diagnosed with Down's Syndrome.  They ranged from three to six years of age.

2          Defendants are Brentwood Union School District ("Brentwood" or "the District");

3    Dina Holder, a teacher formerly employed by Brentwood; Lauri James, former principal of

4    Loma Vista Elementary School, part of Brentwood; Jean Anthony, former director of

5    Special Education at Brentwood; Margo Olson, director of Special Education and

6    Interventions at Brentwood; Margaret Kruse, Assistant Superintendent at Brentwood;

7    Merrill Grant, former Superintendent at Brentwood; and Brian Jones, principal of Krey

8    Elementary School, part of Brentwood.

9          Dina Holder ("Holder") was employed by Brentwood as a special education

10   teacher in special day classes from 1996 to 2012.  She taught at Loma Vista Elementary

11   School until May 2010 when she was removed and transferred to Krey Elementary

12   School to begin the 2010-2011 school year.

13         This is the third lawsuit filed in this judicial district, arising out of events that

14   allegedly occurred in Holder's classroom while she was employed by the District.  The

15   first suit arose from an incident that occurred at the end of the school year in 2010, when

16   Holder pulled a student out of a chair and kicked him as he lay on the floor.  That student

17   and his family were plaintiffs in Phelan v. Holder (Case No. C-12-0465), which was filed

18   in January 2012, settled in January 2013, and was dismissed in April 2013.  The second

19   suit, Guerrero v. Brentwood (Case No. C-13-3873), involved eight minor plaintiffs and

20   their families.  It was filed in August 2013, and settled and was dismissed in May 2014.

21   The claims in the present action, which was filed in October 2014, arise out of the

22   experiences of the six minor plaintiffs in Holder's class during various time periods

23   between July of 2008 and June of 2012.

24         In the third amended complaint in this action, plaintiffs incorporate allegations

25   relating to the incidents that gave rise to the Phelan and Guerrero cases, starting in 2008,

26   when a parent observed Holder shaking her son, L.L. (a plaintiff in the Guerrero case), by

27   the shoulders, and another student, K.G. (also a plaintiff in the Guerrero case), reported

28   that he had been slapped at school by an adult.  Both these incidents were reported to

United States District Court
Northern District of California

1   the District and the police.  Investigations ensued but Holder remained employed by the

2   District.  Following the investigation of the incident that occurred in May 2010 and which

3   gave rise to the Phelan case, the District did not find sufficient cause to terminate Holder,

4   and instead issued a "Letter of Unprofessional Conduct" and transferred her to Krey from

5   Loma Vista.  Holder resigned from the District pursuant to the settlement in the Phelan

6   case.  Her teaching credentials were revoked by the California Commission on Teacher

7   Credentialing on February 21, 2013.

8       With their opposition to the present motion, plaintiffs have submitted a declaration

9   by Lynn Ponton, M.D., a psychiatrist who states that she examined 14 children who had

10  been students in Holder's classroom (though apparently none are plaintiffs in the present

11  case).  Dr. Ponton refers specifically to five of the students she interviewed and states

12  that some of them reported that Holder yelled at them; hit, grabbed, and pinched them;

13  and allowed students to hit each other.  Dr. Ponton asserts that all the children she

14  interviewed exhibited signs of PTSD, depression, and anxiety, caused by the abuse they

15  allegedly witnessed.

16      Plaintiffs have also submitted excerpts of deposition testimony by the parents of

17  four of the minor plaintiffs in this action – M.G., E.R., B.G., and A.G.  Mr. Garedakis

18  testified that after M.G. entered Holder's class, he "was uneasy" and showing "signs that

19  he really didn't want to be there;" that he seemed "more stressed, more anxiety [sic],

20  more – not his normal, at-ease self;" that the "changed behaviors" worsened over time;

21  and that when picked up after school, was often "pressed up against the window" and

22  would run out of the room.  Mrs. Garedakis testified that M.G. "had a high level of anxiety

23  and fear;" that "his sleeping patterns and his eating patterns had changed;" that "he went

24  from very, very happy to very, very anxious;" and that when his father took him to school,

25  "he would cling to his father's leg and wouldn't let go," and he "looked very scared," "very

26  stressed."

27      Mrs. Razaqi testified that E.R. regressed academically and behaviorally in Holder's

28  class.  Mrs. Gullo testified that B.G. began hiding "every few days" after he started in

3

United States District Court
Northern District of California

1  Holder's class.  Mr. Gullo testified that B.G. became defensive, withdrawn, and emotional

2  and did not progress while he was in Holder's class.  Mrs. Jackson testified that she had

3  concerns about how A.G. was acting and progressing in Holder's class, and she recalled

4  telling the IEP team during the May 2013 meeting she wanted A.G. to repeat the grade

5  because she had "lost time academically."

6       Plaintiffs submitted a declaration by Helena Huckabee, Ph.D., a psychologist who

7  examined four of the minor plaintiffs – A.G., E.R., B.G., and B.R. Dr. Huckabee reports

8  that according to A.G.'s parents, prior to the time she was enrolled in Holder's class, A.G.

9  she was a "sweet, caring, and loving child" who enjoyed helping at home and spending

10  time with family, and who was doing well in school.  After examining A.G., Dr. Huckabee

11  found that she was "a different child," who refused to follow directions or cooperate, and

12  who would run away and lock herself in the bathroom; and that while A.G.'s speech was

13  previously reported as being within normal limits, she now speaks at such a rapid rate

14  that her speech is almost incomprehensible.  Dr. Huckabee concluded that these

15  changes and other behaviors she engaged in reflected severe anxiety, and that she now

16  meets the criteria for PTSD.

17       With regard to E.R., Dr. Huckabee reports that his IEPs reflected significant delays

18  in speech and language, and in adaptive, social, and academic skills.  She reports that

19  E.R. had a successful first half of kindergarten, but that according to his parents, this

20  changed after he entered Holder's classroom in January 2012, when he became "sad,"

21  "didn't want to be held," "avoided the family," and exhibited "no affection."  His parents

22  also reported a decline in skills by the end of the 2012 school year.  She reports that,

23  according to his parents, B.R. asks them if they remember the "mean teacher" and

24  appears distressed when he speaks about a specific incident when he was not allowed to

25  go to the library.  Huckabee states that B.R. exhibits symptoms of trauma (anxiety,

26  difficulty sleeping, unwillingness to talk about past events), and she concludes that he

27  suffers from PTSD.

28       With regard to B.G., Dr. Huckabee reports that according to his parents, B.G. was

United States District Court
Northern District of California

1   formerly a "happy child" who had a strong relationship with his twin sister, but that after

2   being enrolled in Holder's class, he began exhibiting markedly increased aggressive

3   behaviors (including hitting) and that he would hide under blankets whenever he was

4   upset or would start crying but could not explain why.  He also told his parents almost

5   daily that he was "scared," began hitting his sister and telling his parents he did not want

6   to go to school.  Dr. Huckabee found that B.G. exhibited marked depression, low energy,

7   poor motivation, difficulty communicating, and concluded that emotional symptoms and

8   trauma were impacting him academically.  She states that when she asked B.G about

9   Holder, he stated that he did not remember her, and Dr. Huckabee concluded from this

10   that he was repressing the memories of the time he was in her classroom, and that he

11   was suffering from PTSD and major depression.

12          Dr. Huckabee reports that according to his parents, B.R. loved going to pre-K,

13   loved his pre-K teacher, and was "happy and excited" to be entering kindergarten.  She

14   states that B.R.'s IEP at the age of four reflected that he had a lot of potential to recover

15   from autism, or at least have a positive outcome.  His parents reported that he also

16   "loved" his kindergarten teacher, Mrs. Poole, and that he was making good progress.

17   However, B.R.'s parents reported that after he entered Holder's class as a first-grade

18   student, his behavior changed, and he became unwilling to go to school, and was

19   "downcast and discouraged."  B.R. is currently a sixth-grade student, and based on his

20   current IEP, Dr. Huckabee concludes that he requires significant support to navigate the

21   school environment.  She refers to deposition testimony by B.R.'s mother that while he

22   was in Holder's class, he returned home with red marks on two occasions, and that he

23   told his mother he had been pushed into a chair by Holder on the first occasion, pulled

24   into line on the second occasion.  Dr. Huckabee concludes that because B.R. states he

25   does not remember much from Holder's class, he is suffering from PTSD.

26          Plaintiffs also submitted a declaration by Nora Baladerian, Ph.D., a psychologist

27   who examined M.G.  Dr. Baladerian specializes in examining special needs children and

28   adults who have been victims of abuse.  She states that she reviewed transcripts of

depositions of five District employees who are not defendants in this action, plus deposition transcript excerpts of M.G.'s parents, as well as the June 4, 2010 "Letter of Unprofessional Conduct" issued to Holder.  She states that based on that review, she is "aware . . . that Holder's classroom was a tense, unhappy, and fearful environment, in which a number of children were physically abused and the entire class subjected to yelling and hearing disparaging remarks made about children."  She notes that Mr. Garedakis testified in his deposition that he had observed classroom aides wiggling their toes at M.G., while he became sexually aroused, and that  "Kelly", a classroom aide, had told him that aides would put M.G. on the floor and wiggle their toes in his face and make "sexualized comments about him responding sexually."

Dr. Baladerian visited M.G. in his home on two occasions.  She reports that M.G. initially seemed friendly and interacted with her in a positive way.  However, when she showed him a picture of Holder, his demeanor changed immediately, and he "began to tear up" and then left the room and did not reappear for an hour.  Dr. Baladerian reports that on the second occasion, when M.G. saw who was at the door, he spat at her twice, then kicked her, and later spat at her again and made some hitting motions.

Dr. Baladerian asserts that based on her interview, M.G.'s psychological changes since his time at Loma Vista Elementary include nightmares, lack of energy, irritability, depression, anxiety, social isolation, poor tolerance in previously pleasurable activities, problems thinking and concentrating, phobia about going to school, anger, crying, and other emotional difficulties.  She states that M.G.'s parents reported changes they observed in M.G.'s behavior while he was enrolled in Holder's class.  She concludes that the Brentwood employees engaged in sexual abuse of M.G., and that he also exhibits symptoms of PTSD.

Plaintiffs filed the present action on October 28, 2014, and filed a first amended complaint on December 15, 2014, pursuant to stipulation.  On January 30, 2015, plaintiffs filed a second amended complaint.  Following rulings on defendants' motions to dismiss and to strike, plaintiffs filed the third amended complaint on October 21, 2016.

United States District Court
Northern District of California

1       Remaining in the case are causes of action for discrimination in violation of the

2   ADA, by the six minor plaintiffs against Brentwood; and violation of § 504 of the

3   Rehabilitation Act of 1973, by the minor plaintiffs against Brentwood; plus state and

4   common law claims for violation of Cal. Civil Code § 52.1 ("Bane Act"), by the minor

5   plaintiffs against Holder and Brentwood; battery, by the minor plaintiffs against Holder;

6   intentional infliction of emotional distress, negligence, negligent supervision, and violation

7   of Cal. Civil Code § 51 (Unruh Act), by all plaintiffs against all defendants; violation of

8   mandatory duty to report child abuse, by the minor plaintiffs against all defendants; and

9   violation of Cal. Educ. Code § 220, by the minor plaintiffs against Brentwood.

10  Defendants now seek summary judgment as to all claims asserted against them.

                                **DISCUSSION**

12  A.      Legal Standard

13      A party may move for summary judgment on a "claim or defense" or "part of . . . a

14  claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there

15  is no genuine dispute as to any material fact and the moving party is entitled to judgment

16  as a matter of law.  Id.

17      A party seeking summary judgment bears the initial burden of informing the court

18  of the basis for its motion, and of identifying those portions of the pleadings and discovery

19  responses that demonstrate the absence of a genuine issue of material fact.  Celotex

20  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the

21  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

22  dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

23  jury to return a verdict for the nonmoving party.  Id.

24      Where the moving party will have the burden of proof at trial, it must affirmatively

25  demonstrate that no reasonable trier of fact could find other than for the moving party.

26  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue

27  where the nonmoving party will bear the burden of proof at trial, the moving party can

28  prevail merely by pointing out to the district court that there is an absence of evidence to

                                        7

1   support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party

2   meets its initial burden, the opposing party must then set out specific facts showing a

3   genuine issue for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also

4   Fed. R. Civ. P. 56(c), (e).  When deciding a summary judgment motion, a court must view

5   the evidence in the light most favorable to the nonmoving party and draw all justifiable

6   inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of L.A., 638 F.3d 703, 709

7   (9th Cir. 2011).

8   B.      Defendants' Motion

9           1.      State and common law claims

10          Defendants argue that summary judgment should be granted on the state and

11  common-law claims because plaintiffs failed to comply with the claim presentation

12  requirements in California's Government Claims Act, Cal. Govt. Code § 900, et seq.

13  ("Claims Act").  Under the Claims Act, no suit for "money or damages" may be brought

14  against a public entity until a written claim has been presented to the public entity and the

15  claim either has been acted upon or is deemed to have been rejected.  Cal. Govt. Code,

16  §§ 905, 945.4.  Compliance with this requirement constitutes an element of a cause of

17  action for damages against a public entity or official.  State v. Sup. Ct. (Bodde), 32

18  Cal.4th 1234, 1244 (2004).  A suit for "money or damages" includes all actions where the

19  plaintiff is seeking monetary relief, regardless whether the action is founded in tort,

20  contract, or some other theory.  Hart v. Alameda Cnty., 76 Cal. App. 4th 766, 778-79

21  (2000) (citing Baines Pickwick Ltd. v. City of L.A., 72 Cal. App. 4th 298, 307 (1999)).

22          Defendants contend that two sets of plaintiffs – the Rose (B.R.) and Razaqi (E.R.)

23  plaintiffs –  never presented written claims, and are thus barred from pursuing the state

24  and common-law claims asserted; and that the other four sets of plaintiffs – the

25  Garedakis (M.G.), Maguire/Baca (M.R.), Jackson (A.G.), and Gullo (B.G.) plaintiffs – did

26  not file their written claims until June of 2014, and when those claims were denied as

27  untimely, failed to file the required applications to file late claims, and are now barred

28  from pursuing those claims.

1

United States District Court
Northern District of California

        In response, plaintiffs concede that with the exception of the claims asserted by

M.G., the state and common-law claims are barred either by the statute of limitations or

by plaintiffs' failure to comply with the requirements of the Claims Act.  They assert that

M.G.'s claims are not barred because they are based on childhood sexual abuse arising

on/after January 1, 2009, which have been excepted from the claim filing requirements.

        California Govt. Code § 905(m) provides that "[c]laims made pursuant to Section

340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of

childhood sexual abuse . . . arising out of conduct occurring after January 1, 2009" are

excepted from the claim filing requirements.  Plaintiffs contend that it is undisputed that

M.G. was in Holder's class during the 2008-2009 school year, and that they have

established that he was the victim of sexual abuse.

        The motion is GRANTED as to the state and common-law law claims asserted by

all plaintiffs with the exception of M.G.  The court has directed that the parties provide

further briefing on this issue, and DEFERS ruling on the portion of the motion directed at

M.G.'s state law claims until after the further briefing is complete.

        2.      Federal claims

        Defendants assert that summary judgment should be also granted in their favor

with regard to the ADA and Rehabilitation Act § 504 claims (which are asserted only

against the District).  Defendants argue that plaintiffs lack evidence sufficient to create a

triable issue as to whether any alleged discrimination occurred by reason of the minor

plaintiffs' disabilities; and as to whether the defendants displayed deliberate indifference

with respect to the minor plaintiffs.  Defendants also assert that the court should decline

to recognize a separate or distinct claim under the ADA or § 504 based on an allegedly

hostile educational environment, or, in the alternative, should find that plaintiffs lack

evidence sufficient to create a triable issue as to whether the minor plaintiffs experienced

a hostile educational environment.

        Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act. Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2002). The court analyzes claims under the ADA and § 504 together, because there is no significant difference in the analysis of rights and obligations created by the two Acts. Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999); see also Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1055 n.1 (9th Cir. 2005).

In a case alleging discrimination in violation of the ADA and § 504, the plaintiff bears the burden of proving that he/she is disabled within the meaning of the Acts. Wong, 410 F.3d at 1063. In addition, the plaintiff must show that the discrimination was "by reason of" (or in the case of § 504, "solely by reason of") his/her disability. See 42 U.S.C. § 12132; 29 U.S.C. § 794; see also E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ., 728 F.3d 982, 992 (9th Cir. 2013). The plaintiff must also show that the discrimination was intentional. Duvall, 260 F.3d at 1138-39. Deliberate indifference – defined as "knowledge that a harm to federally protected right is substantially likely, and a failure to act on that likelihood – qualifies as intent. Id. at 1139. The failure to act must be more than negligent, and "involves an element of deliberateness." Id.

In their first main argument, defendants contend that plaintiffs lack evidence that any discrimination occurred by reason of the minor plaintiffs' disabilities, and indeed, that the parents of each of the minor plaintiffs testified in their depositions that they had no information that any of the individual defendants had denied their children any benefits based on their disabilities.

Mrs. Jackson (mother of and guardian ad litem for A.G.) testified that she has no

10

United States District Court
Northern District of California

1  information that any of the individual defendants denied A.G. any benefits based on her

2  disability.  Mr. Gullo (father of B.G.) testified that he has no information that anyone at the

3  District discriminated against any of the students in Holder's class because they were

4  disabled; and Mrs. Gullo similarly testified that she had no information that the District

5  discriminates against disabled students, and no information that any of the defendants

6  have prevented B.G. from getting necessary special education services.

7       Mrs. Rose (mother of and guardian ad litem for B.R.) testified that she has no

8  information that any of the individual defendant administrators intentionally discriminated

9  against B.R. because he is a special-needs student.  As to the allegation that Holder had

10  injured B.R.'s wrist, Mrs. Rose testified that her assumption regarding the reason was not

11  B.R.'s disability, but rather that Holder was impatient because B.R. was not lining up as

12  instructed.

13       Mr. and Mrs. Garedakis (M.G.'s parents) offered similar testimony.  Mr. Garedakis

14  testified that he has no information that any of the individual defendant administrators

15  harbored any discriminatory feelings towards children with disabilities, and Mrs.

16  Garedakis testified that she has no information that any of the individual defendant

17  administrators were in any way prejudiced against M.G. or other disabled children

18  because of their disabilities.

19       Both Mr. and Mrs. Razaqi (parents of E.R.) testified that they have no documents

20  to support their allegation that E.R. was deprived of advantages, privileges, and services

21  based on his disability.  Mr. Razaqi also testified that he has no information to suggest

22  that District employees intentionally deprived disabled students of special education

23  services.  Moreover, during his deposition, E.R. denied have ever heard a teacher call

24  him (or any other student) "stupid."

25       Finally, when Mrs. Maquire (mother of M.R.) was asked similar questions, her

26  testimony and her attorneys' objections demonstrated that she has no knowledge or

27  information about this issue other than information she received from her attorneys.

28  Moreover, M.R. himself testified that he did not remember ever having been yelled at

while in school or having been called a bad name in school.

In opposition, plaintiffs assert that because the minor plaintiffs were assigned to Holder's classroom because of needs related to their disabilities, and because students in other Brentwood classrooms were not subjected to similar abuse, the discrimination and denial of access to education were necessarily "by reason of" their disabilities.

Plaintiffs also assert that discriminatory animus is shown by the fact that Holder referred to the students as "stupid" and "little shits" and described teaching her students as "puppy training;" by the fact that she admitted to the mother of the student who was kicked that she "frequently expressed frustration" with the student; by the fact that other District employees expressed concern that she was becoming frustrated with special needs students, and the fact that she aggressively moved children by the arm and forced them into chairs, and "yelled" at children and berated them if they did not verbalize a response.

The court finds that plaintiffs have not provided evidence sufficient to create a triable issue as to whether any discrimination or denial of benefits occurred by reason of the minor plaintiffs' disabilities.  First, they offer no argument or evidence to support the notion that the individual defendant administrators discriminated against, or denied benefits to, the minor plaintiffs "by reason of" their disabilities.  Indeed, all the parents who were deposed conceded that they had no evidence of deliberate indifference or discrimination by reason of their children's disabilities.

Without evidence supporting that element (i.e., discrimination or denial of benefits by reason of a disability), any claim based on the actions or inactions of the individual defendants must fail.  For example, plaintiffs cannot base liability on the decision to place Holder in the special day class, and cannot base liability on decisions relating to how Holder was supervised, disciplined (or not), assigned to her classroom, or evaluated (including with respect to potential termination of her employment), because they have no evidence that any such decision was made "by reason of" the minor plaintiffs' disabilities. It is true that the minor plaintiffs were assigned to Holder's special education classroom

"because of the needs related to" their disabilities.  Nevertheless, this does not provide proof of discrimination "by reason of" the minor plaintiffs' disabilities.  To conclude otherwise would mean that it is sufficient under the ADA and § 504 to simply show that the plaintiff is disabled, thereby removing the element of causation from the calculus.

Rather than attempting to make a case against the administrator defendants, plaintiffs have focused their attention on Holder.  For example, they assert that Holder "accompanied" her alleged verbal and physical abuse with slurs directed against her students ("stupid," "little shits," etc.), suggesting a connection between the alleged slurs and the alleged abuse, and that the abuse occurred "by reason of" the plaintiffs' disabilities.  However, the record does not support plaintiffs' theory.  For example, Heidi Vincent testified that while she had heard Holder swear "about" her students, she had never heard her swear "at" her students.  Similarly, Janice Lopez testified that while she had heard Holder refer to J.P. (not a plaintiff in this case) as a "son of a bitch," she had never heard Holder say that to J.P.'s face, and that she did not recall Holder saying that to any other student.  As for the statement attributed to Megan Balderas – that Holder purportedly compared teaching her students to "puppy training" – this statement is inadmissible hearsay.  Moreover, it appears that Holder was simply expressing her opinion regarding a particular method of teaching, rather than comparing her students to dogs.

As for plaintiffs' argument that the evidence shows that Holder became frustrated with her students, what is missing is any evidence that the alleged frustration with the students' disabilities was a factor that motivated discrimination.  Mere signs of frustration, without more, are not sufficient to subject the District to liability based on a conclusion that Holder discriminated against the minor plaintiffs or denied them benefits "by reason of" their disabilities.

For example, plaintiffs cite the deposition testimony of Samantha Sheldon to show Holder's frustration.  However, Ms. Sheldon never testified that any such alleged frustration derived from the students' disabilities, as opposed to the fact that pre-school

13

students can be difficult to handle (whether or not disabled).  In any event, much of Sheldon's testimony is inadmissible hearsay, as it consists of her reporting on what she claims to have heard from other classroom aides.  Plaintiffs also point to the deposition testimony of another aide, Kelly Knapp.  She testified that Holder would sometimes become frustrated if a student would not respond to her, but she offered no opinion with regard to any possible basis for such frustration (and if she had offered an opinion, it probably would not be admissible).

In their second main argument, defendants contend that plaintiffs lack evidence sufficient to create a triable issue as to whether the defendants displayed deliberate indifference with respect to the minor plaintiffs.  As indicated above, deliberate indifference is an element of plaintiffs' federal claims under the ADA and § 504, and it requires both knowledge that a harm to a federally protected right is substantially likely, and also a failure to act upon that the likelihood.  Duvall, 260 F.3d at 1139.  This is a stringent standard of fault, "even higher than gross negligence[.]"  Patel v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011).

> [D]eliberate indifference requires a culpable mental state.  The state actor must 'recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'  In other words, the defendant 'knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it.'"

Id. (citations omitted).

Defendants argue that plaintiffs cannot prove that defendants demonstrated deliberate indifference towards the minor plaintiffs because there is no evidence that the minor plaintiffs were subjected to physical or verbal abuse, let alone that any District administrators knew about or were deliberately indifferent to any abuse.  They assert that the evidence, including the parent plaintiffs' own testimony, shows that the District never received complaints from the parent plaintiffs that would have alerted the District that a harm to a federally-protected right was substantially likely to occur.  Indeed, the parents (including Mrs. Gullo, Mr. Gullo, Ms. Maguire, Mrs. Razaqi, Mrs. Garadakis, Mrs. Jackson, and Mrs. Rose) testified that they never told anyone at the District that his/her

United States District Court
Northern District of California

United States District Court
Northern District of California

1   child's behavior changes or other problems were connected to Holder's class.

2        Defendants argue further that the District's response, when it learned of the 2010

3   incident involving J.P., is inconsistent with deliberate indifference, as District personnel

4   quickly mounted an investigation, took written statements from aides who had been

5   present in the classroom, and interviewed Holder.  After spending time over the summer

6   formulating a plan as to how to deal with the problem, they came to a conclusion that the

7   District lacked sufficient evidence to fire Holder.  Instead, they set up new procedures

8   relating to Holder's return to the classroom, as well as a schedule of observations by

9   various administrators (who later met to discuss their observations).

10       Plaintiffs' position, as set forth in the opposition, is that the District is vicariously

11  liable for the deliberate indifference of Holder.  Plaintiffs argue that "there is much

12  evidence of prior notice of Holder's abuse to administrators," although they support that

13  contention with citations to various exhibits without explaining the relevance of those

14  exhibits to their argument.  Moreover, they assert, defendants' arguments – that the

15  administrators did not have knowledge of Holder's misconduct or did not act appropriately

16  when they learned of it – are irrelevant, because under Duvall, Brentwood has

17  respondeat superior liability for Holder's deliberate indifference.

18       As for Holder, plaintiffs argue that there is ample evidence of her deliberate

19  indifference.  They assert that "the risk of substantial harm from Holder's abuse and

20  failure to provide services is obvious," and that Holder was "deliberately indifferent to

21  suggestions from school psychologists, speech-language pathologists, and other

22  specialists advising her on how to improve her classroom."  However, rather than

23  explaining those statements, they again cite to a string of exhibits (declarations and

24  excerpts of deposition transcripts), without pointing to any particular testimony by

25  reference to page/line or paragraph number.  Plaintiffs contend that because Holder was

26  instructed as to what she needed to do with regard to providing individualized education,

27  but failed to comply with those instructions, and failed to follow the IEPs, she deliberately

28  failed to provide appropriate instruction to her students, and the minor plaintiffs were

1    deprived of access to education based on their disabilities, for which the District is

2    vicariously liable.

3           The court finds that the evidence provided by plaintiffs is insufficient to create a

4    triable issue with regard to deliberate indifference.  First, Holder's alleged failure to act in

5    response to her own behavior – that is, the assertion that she was aware of her own

6    purportedly inappropriate conduct, but continued to act in the same manner – does not

7    create a triable issue with regard to deliberate indifference.  Plaintiffs seem to be

8    suggesting that the fact of Holder's conduct by itself satisfies the two-part requirement for

9    showing deliberate indifference – notice that harm is likely to occur, and failure to act in

10   response to that knowledge – but under that theory, the District would be subjected to

11   liability based solely on the alleged misdeeds of Holder.  It ignores the issue of whether

12   anyone who had the authority to address Holder's behavior (i.e., the administrator

13   defendants) exhibited any deliberate indifference.

14          The Duvall case is factually distinguishable.  Duvall involved a requested

15   accommodation (unlike the present case), and the Ninth Circuit emphasized the fact that

16   the individual defendant in that case had the authority to make the requested

17   accommodation, but failed to make use of that authority, and so could be said to have

18   shown deliberate indifference.  See id., 260 F.3d at 1140-41 n.15.  Here, Holder could not

19   have removed herself from the classroom, or otherwise responded in a meaningful way

20   to her own misdeeds.  The deliberate indifference analysis does not stop with Holder, but

21   instead must include the administrator defendants because it was only the individual

22   administrator defendants who, like the defendant in the Duvall case, had the authority to

23   take action in response to any threat that Holder might have posed to her students'

24   federally-protected rights.

25          Second, plaintiffs have provided no evidence supporting deliberate indifference

26   generally; no evidence regarding any actual physical or verbal abuse of these particular

27   minor plaintiffs; no evidence that District administrators were aware of and ignored such

28   alleged abuse of the minor plaintiffs; and no evidence that the District ever received from

the parents of these minor plaintiffs complaints that would have alerted them that harm to a federally-protected right was likely to occur in Holder's classroom.

None of the evidence cited by plaintiffs constitutes competent evidence regarding the requisite notice and failure to act.  Plaintiffs repeatedly cite Exhibit 1, the Notice of Unprofessional Conduct that the District issued to Holder following the Phelan incident. However, this letter does not support a claim of deliberate indifference; rather, it reflects and illustrates the many steps that District personnel engaged in as part of the District's response to that incident.  Regardless of whether the District's response produced the desired result from plaintiffs' perspective, it cannot be said that the response constituted deliberate indifference.

The allegations regarding L.L. and K.G. have no bearing on this case, as neither is a plaintiff here, and both incidents predated the incident that gave rise to the Phelan action.  Furthermore, the evidence shows that the District investigated both of these incidents, and that neither investigation resulted in evidence from which the District could have concluded that Holder posed a substantial threat to her students' federally-protected rights – i.e., there was no supporting evidence apart from the original allegation.  Holder denied the accusations, and the classroom aides also denied that the incidents had occurred.  Moreover, defendants assert, even if these incidents actually occurred as the parents claimed, it is not clear that either incident implicated federally-protected rights to be free from discrimination based on disability, to be free from conscience-shocking behavior, or to be free from unreasonable seizures or other restraints.

The allegations regarding B.R., a plaintiff in this action (allegations that Holder scratched B.R.'s arm), do not support plaintiffs' position.  B.R.'s mother Mrs. Rose testified in her deposition that she had no personal knowledge of what happened, and that none of the alleged injuries bled, bruised, or required a bandage or a trip to the doctor.  Moreover, B.R. himself testified that Holder never hurt him and that he never told anyone she had touched him in a way he did not like.

Plaintiffs' citation to the letter from Mr. and Mrs. Holm – parents who considered

United States District Court
Northern District of California

1   placing their child in Holder's classroom but withdrew him after one day because they

2   found Holder to be "unprofessional" and "sloppy" and "unfocused" – does not help

3   plaintiffs' case.  Nothing in that letter is sufficient to provide notice that harm to a federally

4   protected right was substantially likely to occur.

5          In their third main argument, defendants assert that the court should decline to

6   recognize a separate or distinct claim under the ADA or § 504 based on an allegedly

7   hostile educational environment, or, in the alternative, should find that plaintiffs lack

8   evidence sufficient to create a triable issue as to whether the minor plaintiffs experienced

9   a hostile educational environment.

10          In support of their argument regarding the "hostile educational environment" claim,

11   plaintiffs rely primarily on the decision in Guckenberger v. Boston Univ., 957 F.Supp. 306

12   (D.Mass. 1997).  Plaintiffs contend that there is sufficient evidence to raise a triable issue

13   as to whether Holder subjected the minor plaintiffs to severe and pervasive harassment

14   based on their disabilities.

15          In Guckenberger, the District of Massachusetts recognized a cause of action

16   under the ADA and § 504 for hostile learning environment when the harassment is based

17   on a student's disability.  The court found that the language of both the ADA and § 504 is

18   substantially similar to the language in Title IX, which courts have held provides a

19   statutory basis for hostile learning environment claims based on sexual harassment.  Id.

20   at 313-14.  The court concluded that "the flexible Title VII standards for establishing a

21   hostile work environment claim apply to hostile learning environment claims brought

22   under the federal statutes prohibiting discrimination against persons with disabilities[,]"

23   and articulated a standard based on the standard for sexual harassment set forth in

24   Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66-73 (1986).  See Guckenberger, 957

25   F.Supp. at 314.

26          Federal courts have recognized claims of hostile educational environment based

27   on sex (Title IX) and race (Title VI and/or Equal Protection Clause under § 1983).  See

28   Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 639-47 (1999) (recognizing private

damages action by a student against a school board for peer-to-peer sexual harassment under Title IX); Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1033-34 (9th Cir. 1998) (recognizing claim of racially hostile educational environment under Title VI, based on peer-to-peer harassment of one student by other students).

However, this court was unable to locate any decision by the Ninth Circuit or by any district court within the Ninth Circuit recognizing a claim of hostile educational environment under the ADA or § 504, against a school board, and this court declines to do so. In addition, even were the claim to be recognized, plaintiffs have not provided evidence sufficient to create a triable issue as to whether they were subjected to a hostile educational environment that was both based on their disabilities and was sufficiently pervasive or severe.

The court finds that summary judgment must be GRANTED as to the ADA and § 504 claims. First, there is no evidence that any District personnel discriminated against any of the minor plaintiffs "by reason of" their disabilities. In particular, there is no evidence in any of the parent depositions that any of the defendants – including Holder – discriminated against the minor plaintiffs or denied them benefits "by reason of" their disabilities.

Plaintiffs' argument appears to be that because their claim is that the minor plaintiffs were denied meaningful access to education, and because the education that the minor plaintiffs did not receive was education directed that focused on their disabilities, the denial of such access to education was necessarily "by reason of" their disabilities. The problem with this theory, as defendants point out, is that it could be applied to any ADA or § 504 claim by a student against a school district, and would eliminate the requirement that an ADA or § 504 plaintiff show that the alleged discrimination was "by reason of" his/her disability, which is an element of claims under both the ADA and § 504.

Plaintiffs' other argument appears to be that because Holder had poor classroom management skills, and was not otherwise an effective teacher, and because she had

United States District Court
Northern District of California

1   been observed kicking and hitting students who are not plaintiffs in the present case, she

2   necessarily must have been harboring discriminatory animus towards the disabled minor

3   plaintiffs in this case.  However, plaintiffs have produced no evidence showing that

4   Holder engaged in any discriminatory act towards any one of the individual minor

5   plaintiffs "by reason of" his/her disability.  Instead, they have filled pages with citations to

6   evidence that purports to demonstrate that Holder was a bad teacher.  However, this

7   does not show discriminatory animus.

8   Plaintiffs refer generally to Holder engaging in "physical and verbal abuse," but

9   most of the evidence does not relate to the minor plaintiffs in this case.  The primary

10  exceptions are the Huckabee Declaration (re A.G., B.G., B.R., and E.R.) and the

11  Baladerian Declaration (re M.G.), but there, the allegations regarding the alleged abuse

12  involve hearsay reports by the parents, school and IEP records showing a deterioration of

13  functioning, and the conclusions of Drs. Huckabee and Baladerian, respectively, that five

14  of the six minor plaintiffs are suffering from PTSD.  There is no testimony or other

15  evidence that shows that the six minor plaintiffs in this case were subjected to abuse.

16  Nor have plaintiffs provided evidence sufficient to raise a triable issue with regard

17  to deliberate indifference.  Plaintiffs refer generally to "the risk of harm from Holder's

18  abuse and failure to provide services," but they have not established that Holder abused

19  any of the minor plaintiffs.  None of the parents testified regarding any specific acts of

20  abuse by Holder.  There are vague references to the fact that she "yelled at students,"

21  and created an unwelcoming atmosphere, but nothing about specific acts aimed at

22  specific plaintiffs.

23  As for the claim that Holder was "deliberately indifferent to suggestions from

24  school psychologists," the court agrees with defendants that Holder's alleged failure to

25  act with regard to her own behavior does not create a triable issue with regard to

26  deliberate indifference.

27  **CONCLUSION**

28  In accordance with the foregoing, defendants' motion is GRANTED as to the state

20

law claims asserted by all plaintiffs with the exception of those asserted by M.R.  As stated at the hearing, the court will permit additional briefing as to that one plaintiff.  The motion is GRANTED as to the federal claims asserted by all plaintiffs.

**IT IS SO ORDERED.**

Dated:  April 29, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge