UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL GAREDAKIS, et al.,

    Plaintiffs,

    v.

BRENTWOOD UNION SCHOOL DISTRICT, et al.,

    Defendants.

Case No. 14-cv-4799-PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF M.G.**

Defendants previously moved for summary judgment as to all claims – federal and state – asserted by plaintiffs in the third amended complaint. Defendants argued that the state-law claims should be dismissed for failure to comply with the claims presentation requirements of the California Tort Claims Act (also referred to as the "Government Claims Act"), California Government Code §§ 900, et seq.

Plaintiffs conceded that dismissal of the state-law claims for failure to comply with the claims presentation requirement was warranted, as to all plaintiffs apart from plaintiff M.G. They asserted that M.G's claims should not be dismissed, because of an exception, in § 905(m), to the claims presentation requirement for claims alleging "childhood sexual abuse." The court granted summary judgment as to all claims, with the exception of the state-law claims asserted by M.G., and ordered further briefing with regard to those claims.

**BACKGROUND**

Under the Government Claims Act, "no suit for 'money or damages' may be brought against a public entity until a written claim therefor has been presented to the public entity and either has been acted upon or is deemed to have been rejected." Alliance Fin. v. City & Cnty. of S.F., 64 Cal. App. 4th 635, 641 (1998) (citing Cal. Gov't Code § 945.4). "Compliance with the [Government Claims Act] is mandatory; and failure to file a claim is fatal to the cause of action." Hacienda La Puente Unified Sch. Dist. v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (internal quotation marks and citation omitted); see also Karim-Panahi v. L.A. Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

On June 11, 2014, plaintiff M.G. and his parents, plaintiffs Michael and Tamara Garedakis, filed written claims with the Brentwood Union School District ("the District") pursuant to the Government Claims Act, alleging "abuse" during the period M.G. was a student in Dina Holder's classroom (the 2008/2009 and 2009/2010 school years). M.G. was three years old during the 2008/2009 school year, and had received a diagnosis of autism. The claims submitted alleged that employees of the District "observed and/or had knowledge of information giving rise to a reasonable suspicion that Dina Holder . . . had committed acts of child abuse or neglect as defined by Penal Code § 11165.3 against special needs children in her classroom."

California Penal Code § 11165.3, which is part of the Child Abuse and Neglect Reporting Act, Cal. Pen. Code §§ 11164, et seq., defines "willful harming or endangering of a child" to mean "a situation in which any person willfully causes or permits any child to suffer, or inflicts thereon, unjustifiable physical pain or mental suffering, or willfully . . . permits the person or health of the child to be placed in a situation in which his or her person or health is endangered." Cal. Pen. Code § 11165.3. A separate section of the Act – not referenced in the plaintiffs' claims – defines "sexual abuse," "sexual assault," and "sexual exploitation." See Cal. Pen. Code § 11165.1.

The claim forms submitted by the Garedakis plaintiffs stated that both parents described a "game" M.G. played in class, which

2

      resulted in their child becoming sexually aroused by toes. When confronted by Mr. and Mrs. Garedakis, Holder laughed and said [redacted] was 'becoming a little man.' The parents became increasingly concerned but Margaret Olsen assured them that everything was okay.

      [Redacted] suffers from trauma and is still fixated on feet. This has proven to also be a source of great embarrassment for his parents. His behavioral changes can be attributed to the mental and/or physical abuse he experienced and witnessed in Holder's classroom.

On June 27, 2014, the District's claims administrator denied the claims, on the basis that they were not presented within six months after the event or occurrence, as required by Government Code §§ 901 and 911.2. The denial letters added that plaintiffs' only recourse was to apply to the Contra Costa Solano JPA for leave to present a late claim, per Government Code §§ 911.4-912.2; § 946.6. Plaintiffs did not apply for leave to file a late claim.

The Garedakis plaintiffs (along with the other plaintiffs whose claims have since been dismissed) filed the complaint in the present action on October 28, 2014, asserting causes of action under both federal and state law.[1] A plaintiff suing a public entity "must plead facts showing or excusing compliance with the claims filing requirement." State of Cal. v. Sup. Court, 32 Cal. 4th 1234, 1243-44 (2004); see also Perez v. Golden Empire Transit Dist., 209 Cal. App. 4th 1228, 1236 (2012); Ovando v. Cnty. of L.A., 159 Cal. App. 4th 42, 65 (2008); see also Del Real v. City of Riverside, 95 Cal. App. 4th 761, 767 (2002) (to establish liability of a public entity, the plaintiff must prove compliance with claim presentation requirement, or excuse for noncompliance).

The original complaint did not allege that plaintiffs had complied with the claims presentation requirement of the Government Claims Act, although it did include allegations similar to those in the rejected government claims. See Cplt ¶ 31 (individual District defendants "observed or had knowledge of information giving rise to a reasonable

---

[1] Plaintiffs asserted state-law claims for (1) violation of the Bane Act, California Civil Code § 52.1; (2) battery; (3) intentional infliction of emotional distress; (4) negligence; (5) negligent supervision; (6) violation of mandatory duty under California Penal Code § 11166 to report abuse of a child; (7) violation of the Unruh Civil Rights Act, California Civil Code § 51; and (8) violation of California Education Code § 220.

1  suspicion that Holder had committed acts of child abuse or neglect as defined by Penal

2  Code § 11165.3 against the students in her classroom.").

3  In addition, the original complaint alleged the following with regard to M.G. –

> During his time in Holder's classroom, the adults introduced a "game" which resulted in M.G. becoming sexually aroused by the sight of toes. When confronted by Mr. and Mrs. Garedakis, Holder laughed and said M.G. was "becoming a little man." The parents became increasingly concerned, but Margaret Olsen assured them that everything was okay.

Cplt ¶ 72.

> M.G. suffers from trauma as a result of his exposure to Holder's classroom and is still fixated on feet. This has proven to also be a source of great embarrassment for his parents. His behavioral changes can be attributed to the mental and/or physical abuse he experienced and witnessed in Holder's classroom

Cplt ¶ 73.

On December 15, 2014, plaintiffs filed the first amended complaint ("FAC"). The FAC did not allege compliance with the Government Claims Act, although it did include the same allegations as in Cplt ¶¶ 31, 72-73. See FAC ¶¶ 31, 72-73. On January 30, 2015, plaintiffs filed the second amended complaint ("SAC"), and on October 21, 2015, they filed the third amended complaint ("TAC"). Both the SAC and the TAC asserted that "[p]laintiffs have complied with all procedural requirements of the California Government Tort Claims Act." SAC ¶ 27; TAC ¶ 27.

Both the SAC and the TAC also included allegations similar to those in the original complaint, regarding the District defendants' "knowledge of information giving rise to a reasonable suspicion that Holder had committed acts of child abuse or neglect as defined by Penal Code § 11165.3 against students in her classroom." See SAC ¶ 32; TAC ¶ 32. Finally, both included allegations similar to those in the original complaint regarding the "'game' which resulted in M.G. becoming sexually aroused by the sight of toes." See SAC ¶¶ 73, 74; TAC ¶¶ 76-77. However, neither the SAC nor the TAC alleged that M.G. was excused from compliance with the claims presentation requirements based on allegations of "sexual abuse" and neither asserted a claim of "sexual abuse."

Defendants now seek summary judgment as to M.G.'s state-law claims. Plaintiffs

4

contend that those claims are not barred, because they are based on "childhood sexual abuse" and as such have been excepted from California's claim filing requirements by Government Code § 905(m).  Section 905(m) provides that claims made pursuant to Code of Civil Procedure § 340.1 for "recovery of damages suffered as a result of childhood sexual abuse . . . arising out of conduct occurring after January 1, 2009" are excepted from the claim filing requirements.  Section 340.1(e) defines "childhood sexual abuse" as including "any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by" California Penal Code §§ 266j; 285; 286; 288(b), (c); 288a(b), (c); 289(h), (i), (j); 647.6.  Cal. Civ. P. Code § 340.1(e).  The TAC does not mention § 340.1, and does not include any claim that references conduct proscribed by the listed Penal Code sections.

At the April 13, 2016, hearing on the prior motion, the court asked plaintiffs' counsel which of the state-law causes of action could be construed as asserting a claim of "sexual abuse."  See Transcript ("Tr."), Apr. 13, 2016 (Doc. 208) at 12.  Plaintiffs' counsel pointed to the allegations in TAC ¶ 76 ("During his time in Holder's classroom, the adults introduced a 'game' which resulted in M.G. becoming sexually aroused by the sight of toes.").  Tr. at 12-13.  The court asked, "Which cause of action does that conduct give rise to?"  Tr. at 13.  Plaintiffs' counsel responded, "We have alleged factually that conduct.  We have alleged claims arising out of . . . that conduct, including IIED, the Bane Act, the Unruh Act, and those claims flow from those facts."  Tr. at 13.

The court asked, "Well, which claims, specifically? . . . [E]ach of the claims has a standard.  And if this is the conduct upon which each is based, I need to be able to figure out how.  So tell me specifically which claims."  Tr. at 14.  Plaintiffs' counsel responded that it was unnecessary for plaintiffs to plead a claim under Code of Civil Procedure § 340.1, "since we've put them on notice as to the factual basis of those claims."  Tr. at 15.  Following further discussion, the court ordered additional briefing, directing that defendants could move for summary judgment on the state-law claims as to M.G.  Tr. at 14-17, 38-39.

5

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of L.A., 638 F.3d 703, 709 (9th Cir. 2011).

B.  Defendants' Motion

Defendants argue that summary judgment should be granted as to the state-law claims asserted by plaintiff M.G.  First, defendants contend that no iteration of the

complaint, including the TAC, provided defendants with fair notice that plaintiffs intended to assert a claim for childhood sexual abuse, whether under § 340.1 or otherwise. They note that the term "sexual abuse" does not appear in the TAC, that none of the causes of action reference sexual abuse, and that each of the state-law claims is asserted by all the minor plaintiffs, including M.G., and none of the claims differentiates in any way among any of the plaintiffs.

In particular, defendants assert, the allegations in TAC ¶ 76 were insufficient to put them on notice that M.G. was attempting to bring a separate claim for childhood sexual abuse, or that any of the state claims pled in the TAC could be fairly understood to include a claim for childhood sexual abuse on behalf of M.G. They argue that the paragraph does not specify who introduced the "game" or what it entailed – just that as a result of the game, M.G. became sexually aroused at the sight of toes. They contend that there are no facts pled showing that the "game" involved a "lewd and lascivious act" committed by defendants with the intention of arousing their own sexual desires or those of M.G., required under Penal Code § 288.

Defendants argue further that nothing in plaintiffs' responses to defendants' discovery requests put them on notice that a childhood sexual abuse claim was being made as to M.G. They assert that the discovery responses lumped all the minor plaintiffs together, indicating that they had suffered from the same abuse and sustained the same type of damages. For instance, defendants note, plaintiffs' amended initial disclosures state, with regard to the damages being sought in the case, that damages were sought for "physical, emotional and psychological harm" to "[p]laintiffs M.G., B.G., A.G., B.R., M.R., and E.R., resulting from the hostile educational environment they experienced in Dina Holder's classroom."

Defendants assert that having failed to plead a claim for childhood sexual abuse or otherwise put defendants on notice that such a claim was being made, plaintiffs cannot now manufacture a triable issue and avoid summary judgment by relying on a claim or theory that was not pled in the complaint and as to which neither the court nor the

1  defendants had notice.

2  In their second main argument, defendants note that plaintiffs never requested
3  leave to amend to add a childhood sexual abuse claim on behalf of M.G., and assert that
4  plaintiffs would not be entitled to do so under the Ninth Circuit's five-factor analysis, which
5  looks at bad faith, undue delay, prejudice to the opposing party, futility of amendment,
6  and whether the plaintiff has previously amended the complaint.  See Johnson v.
7  Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004).

8  First, defendants contend that plaintiffs have demonstrated bad faith in failing to
9  raise these issues prior to their opposition to defendants' previous motion for summary
10 judgment.  Second, defendants assert that plaintiffs' delay in raising this issue is undue
11 and unjustifiable, and that in any event, the deadline to amend has long passed.  Third,
12 defendants argue that they would be prejudiced by any amendment, as discovery has
13 closed, and they have not had a fair and full opportunity to develop evidence or witnesses
14 regarding the precise details and timing of plaintiffs' allegations regarding M.G. and his
15 issues with women's toes.  Finally, defendants contend that leave to amend should also
16 be denied because plaintiffs have already amended the complaint on several occasions,
17 and that they could have properly pled a claim for childhood sexual abuse of M.G. if they
18 in fact had believed they had adequate grounds to do so.

19 In opposition, plaintiffs argue that the TAC adequately states a claim for childhood
20 sexual abuse.  They assert that no amendment to the complaint is necessary, but that to
21 the extent that the court finds that the childhood sexual abuse allegations in the TAC
22 require "clarification," they should be permitted to "amend the pleading to conform to
23 proof."  Plaintiffs contend that defendants have had knowledge of the nature of the
24 childhood sexual abuse claims and the relief sought since the beginning of the case,
25 because the TAC pleads facts that give rise to the claims, and because defendants have
26 thoroughly litigated the facts giving rise to and damages flowing from these claims.

27 Plaintiffs point to the allegations in TAC ¶¶ 30, 71-77, where they assert that M.G.
28 was born in March 2005, attended Holder's class during the 2008-2009 school year, has

been diagnosed with autism and is non-verbal, and was unable to communicate what was happening to him; that during his time in Holder's classroom "the adults introduced a 'game' which resulted in M.G. becoming sexually aroused by the site of toes," and that when confronted by Mr. and Mrs. Garedakis, Holder laughed and said M.G. was "becoming a little man;" that when the parents expressed concern, Margaret Olson assured them that everything was OK; that each defendant "had knowledge of" the abuse since 2008; and that M.G. "suffers from trauma as a result of his exposure to Holder's classroom and is still fixated on feet" and that the behavior is so serious the family cannot go out in public places with M.G.

Plaintiffs also contend that despite defendants' representation that they had no notice of the childhood sexual abuse claims, their conduct during discovery proves otherwise. Plaintiffs cite to deposition testimony by M.G.'s parents, and assert that 95 pages of Mr. Garedakis' deposition transcript and 51 pages of Mrs. Garedakis' deposition transcript relate to facts surrounding, and damages arising out of, M.G.'s childhood sexual abuse claim.

In the cited deposition excerpts, Mr. Garedakis testified that he came to the school on one occasion when M.G. was three years old, and briefly witnessed female aides putting their feet in M.G.'s face, which caused M.G. to become "sexually aroused." Plaintiffs note that defendants directly asked Mr. Garedakis whether he thought M.G. was "sexually abused," whether what he saw was "sexual abuse," whether he thought the aides were "pedophiles," whether he thought M.D. was "sexually arouse[d]," whether he told anyone from the District that M.G. was "sexually molested or abused in Mrs. Holder's classroom," and whether he told anyone at Lyon Center (the school M.G. attended after the District school) that M.G. had been "sexually molested by Brentwood Union School District employees." Plaintiffs argue that these questions about "sexual abuse" show that defendants were on notice of the "sexual abuse" claim as to M.G.

Likewise, plaintiffs contend, defendants' "repeated[ ]" and "relentless[ ]" questioning of Mrs. Garedakis shows that they were on notice of the "sexual abuse"

claim. In particular, plaintiffs assert, defendants directly asked Mrs. Garedakis whether she heard Mr. Garedakis say that Holder and her aides acted as "sexual predators or pedophiles," whether she agreed with the term "sexual predators or pedophiles," whether she heard Mr. Garedakis say he saw "sexual abuse" of M.G., and whether Mr. Garedakis told her he saw Holder "sexually abusing" M.G.; and whether she asked Kelly Knapp (one of the classroom aides) whether Knapp was one of the "perpetrators of this sexual abuse," whether she asked Knapp whether Knapp saw M.G. being "sexually abused," and whether she told Knapp she believed M.G. was "sexually assaulted."

Plaintiffs also assert that defendants asked Mrs. Garedakis how long after Mr. Garedakis told her about M.G. being "sexually assaulted" she asked him who was involved, whether she told anyone that the aides involved in the "sexual assault" were named Connie or Leslie, whether Mr. Garedakis specified how long the "sexual abuse" was going on when he saw it through the window, or whether Mr. Garedakis told her what he did when he saw the "sexual assault" of M.G., and whether she took M.G. out of the classroom immediately upon learning that he had been "sexually assaulted," and whether she knew by 2011 that M.G. had been "sexually assaulted" or whether she had heard anything, other than from Mr. Garedakis, that M.G. was "sexually abused;" whether she reported the "sexual assault" to the police, whether Mr. Garedakis told anyone about M.G. being "sexually assaulted," whether she told any of M.G.'s medical providers that M.G. had been "sexually assaulted," and whether she had done any research about "sexualized behavior by autistic children," and whether she agreed there is a difference between M.G. having a fixation with feet and being "sexually assaulted."

In their second main argument, plaintiffs contend that they are not required to assert Government Code § 905(m) – whether to plead compliance with the Government Claims Act or to plead an excuse for non-compliance. They assert that § 905(m) is neither a requirement to comply with the Claims Act nor an excuse from the compliance, but rather simply provides that a plaintiff alleging a claim of childhood sexual abuse is not required to file a written claim under the Government Claims Act.

Plaintiffs also assert that they are not required to plead a claim under Civil Code § 340.1, as that section relates to the statute of limitations for claims seeking "recovery of damages suffered as a result of childhood sexual abuse." They contend that § 340.1 does not provide the substantive basis for a cause of action such as negligence, battery, or IIED. Indeed, they contend, the plain language of § 340.1 does not expressly discuss or refer to these claims or causes of action, but rather, simply extends the statute of limitations for all claims seeking "recovery of damages suffered as a result of childhood sexual abuse."

In this case, plaintiffs assert, they allege that M.G. was three years old at the time of the alleged incident, and that under § 340.1, his state claims arising out of the childhood sexual abuse are still timely, and "[n]othing more needs to be alleged in the TAC." Plaintiffs contend that because there is no civil state cause of action or claim for sexual abuse in California, § 340.1(a) anticipates many different types of claims or causes of action that might be brought based on childhood sexual abuse. They argue that they have adequately alleged facts supporting the state-law claims.

Defendants' motion is GRANTED. M.G.'s claims are not saved by the operation of Government Code § 905(m) because M.G. has not brought a claim of childhood sexual abuse pursuant to Code of Civil Procedure § 340.1. No such claim was pled in the TAC or in any prior iteration of the complaint, and there is no evidence that defendants were on notice that plaintiffs were asserting a claim of childhood sexual abuse.

Neither the facts nor the evidence suggest a claim that qualifies under § 340.1, which defines "childhood sexual abuse" as including "any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by" Penal Code § 266j (procurement of child for lewd or lascivious acts); § 285 (incest); § 286(b), (c) (act of sodomy with minor); § 288(a), (b) (lewd or lascivious acts upon a child); § 288a(b), (c) (oral copulation with minor); § 289(h), (i), (j) (sexual penetration of minor); § 647.6 (child molestation). Cal. Civ. P. Code § 340.1(e).

In order to state a claim for battery or negligence or any other legal theory, based

11

on "sexual abuse," a plaintiff must allege facts showing underlying childhood sexual abuse, as did the plaintiffs in Quarry v. Doe 1, 53 Cal. 4th 945 (2012), a case cited by plaintiffs herein. As indicated above, "childhood sexual abuse" is defined by reference to the Penal Code. Here, however, there are no facts pled in the TAC, and no evidence presented, showing any inappropriate physical or sexual contact between M.G. and any adult that would qualify as "childhood sexual abuse" within the meaning of § 340.1.

Plaintiffs' "sexual abuse" theory is based solely on the allegation that "[d]uring his time in Holder's classroom, the adult's introduced a 'game' which resulted in M.G. becoming sexually aroused by the sight of toes." The only evidence presented is the testimony of M.G.'s father that he briefly observed several unidentified adults sitting in a circle sticking their feet in M.G.'s face, as M.G. was lying on the floor and clutching his genitals.[2]

Defendants were plainly on notice of the claim based on the "toes," which was not pled as a claim of sexual abuse. Had plaintiffs submitted a written claim to the District within six months of the event, they might have fit the claim within one of the state-law causes of action. Instead, plaintiffs belatedly chose to try to fit the claim within a statute that limits conduct to specified Penal Code sections, but have provided no evidence of any such conduct. The deadline to seek leave to amend has long passed. Having failed to file the written claim with the District within the statutory limitation period, and having failed to plead or prove a claim of sexual abuse, plaintiffs are barred from proceeding with the state-law claims as to M.G.

As for plaintiffs' contention that the questions defendants' counsel asked Mr. and Mrs. Garedakis in their depositions demonstrate that defendants were on notice of the purported claim of "sexual abuse," the evidence shows that it was not until the first day of Mrs. Garedakis' deposition (September 9, 2015) that Mr. Garedakis stated in an off-the-

---

[2] Plaintiffs claim that this conduct was a regular occurrence, based on Mrs. Garedakis' testimony that the aide Kelly Knapp told her that it occurred several times a week, and Mr. Garedakis' testimony that Ms. Knapp told him "something was wrong" and it had been "going on for a long time" – all of which is inadmissible hearsay.

record comment that the aides in Holder's classroom were "sexual predators" and pedophiles." The evidence also shows that it was in an attempt to discover whether plaintiffs were in fact attempting to assert a claim of sexual abuse that defendants' counsel questioned Mr. and Mrs. Garedakis on this issue in their depositions.

Mr. Garedakis testified that his outburst was made in a moment of frustration. In addition, however, he refused on the record to characterize the "toe" incident as "sexual abuse" or to label the aides and teachers in Holder's classroom "pedophiles." He testified further that he did not report the incident to the police or to Child Protective Services, and that M.G. had not seen a therapist or any professional in connection with his behavior toward feet.

Plaintiffs filed the TAC on October 21, 2015, less than a week after Mr. Garedakis' deposition. If plaintiffs believed – as they are now arguing – that the testimony of Mr. and Mrs. Garedakis supported a claim for "sexual abuse," they could easily have asserted that claim in the TAC. Nevertheless, as was true with the prior iterations of the complaint, the TAC does not contain the phrase "sexual abuse." The sole use of the word "sexual" in the TAC is in the allegation that during M.G.'s time in Holder's classroom, "the adults introduced a 'game' which resulted in M.G. being sexually aroused by the sight of toes." TAC ¶ 76. The following paragraph alleges that M.G.'s "behavioral changes can be attributed to the mental and/or physical abuse he experienced and witnessed in Holder's classroom." TAC ¶ 77. However, there is no claim that M.G. suffered sexual abuse.

## CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment as to M.G.'s state law claims is GRANTED.

**IT IS SO ORDERED.**

Dated: June 30, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge

13