1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6
7   MICHAEL GAREDAKIS, et al.,
8              Plaintiffs,                    Case No.  14-cv-4799-PJH
9      v.                                     **ORDER RE DEFENDANTS' MOTIONS
                                              FOR ATTORNEY'S FEES; ORDER RE
10  BRENTWOOD UNION SCHOOL                    PLAINTIFFS' MOTIONS FOR REVIEW
    DISTRICT, et al.,                         OF CLERK'S TAXATION OF COSTS**
11
             Defendants.
12
13

14        Before the court are the motions of defendant Dina Holder ("Holder") and

15  defendants Brentwood Union School District ("District"), Lauri James, Brian Jones, Jean

16  Anthony, Margo Olson, Margaret Kruse, and Merrill Grant ("Brentwood defendants") for

17  attorney's fees pursuant to California Code of Civil Procedure § 1038.  Also before the

18  court are plaintiffs' motions for review of the clerk's taxation of costs claimed by Holder

19  and the Brentwood defendants pursuant to 28 U.S.C. § 1920.  Having read the parties'

20  papers and carefully considered their arguments and the relevant legal authority, the

21  court hereby rules as follows.

22                              **BACKGROUND**

23        The background facts are as stated in the court's orders issued May 22, 2015

24  (Doc. 69), April 29, 2016 (Doc. 218), and June 30, 2016 (Doc. 236).  Briefly, Dina Holder

25  was employed by the District as a special education teacher from 1996 to 2012.  Two

26  lawsuits ("Phelan" and "Guerrero") were filed in this court in January 2012 and August

27  2013, respectively, alleging that Holder had subjected developmentally disabled students

28  in her classes to physical and psychological abuse during the period 2008-2010.  Both

*United States District Court*
*Northern District of California*

1   cases settled, and the settlements were reported in the media.  The Phelan case was

2   dismissed in April 2013, and the Guerrero case was dismissed in May 2014.  Holder

3   resigned from the District pursuant to the settlement in Phelan.  In early 2014, parents of

4   six additional students (M.G., A.G., B.G., M.R., B.R., and E.R.) contacted counsel for

5   plaintiffs in the Phelan and Guerrero cases to report that they believed their children had

6   also been subjected to abuse by Holder.

7        Under the California Tort Claims Act ("CTCA"), Cal. Gov't Code §§ 810, et seq.,

8   before filing a state-law tort claim against a public entity, a plaintiff must first file a timely

9   claim for money or damages with the public entity.  Cal. Gov't Code § 911.2.  Any claim

10  for personal injury must be presented not later than six months after accrual of the cause

11  of action.  Cal. Gov't Code § 911.2(a).  Compliance with the claims presentation

12  requirement is an element of a cause of action for damages against a public entity.  See

13  State v. Sup. Court (Bodde), 32 Cal. 4th 1234, 1244 (2004); see also Shirk v. Vista

14  Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007) (timely claim presentation is a condition

15  precedent to claimant's ability to maintain action against public entity).

16       When a claim that is required by § 911.2(a) to be presented not later than six

17  months after the accrual of the cause of action is presented after such time, without an

18  application to present a late claim as set forth in § 911.4, the public entity may, within 45

19  days after the claim is presented, give written notice to the claimant that the claim was

20  not filed timely and is being returned without further notice.  Cal. Gov't Code § 911.3

21  (specifying language to be used in notice).  Only after the public entity has acted on the

22  claim, or is deemed to have rejected it, may the injured person bring a lawsuit alleging a

23  cause of action in tort against the public entity.  J.J. v. Cnty of San Diego, 223 Cal. App.

24  4th 1214, 1219 (2014).

25       Here, on various dates between June 5, 2014, and June 25, 2014, plaintiffs'

26  counsel presented the District with tort claims pursuant to the CTCA, on behalf of families

27  of M.G., A.G., B.G., and M.R..  No claims were submitted on behalf of the families of B.R.

28  or E.R.

United States District Court
Northern District of California

2

1    The parents of M.G. stated in their claim that they became aware of the complaints

2    against Holder in February 2014, although they also asserted that they had noticed

3    changes in M.G.'s behavior while he was enrolled in Holder's class (2008-2009).  The

4    mother of A.G. stated that she became aware of the settlement(s) in mid-January 2014,

5    although she also claimed she had noticed changes in A.G.'s behavior while A.G. was

6    enrolled in Holder's class (2008-2009, 2010-2012).  The parents of B.G. stated that they

7    became aware of the settlement(s) in mid-January 2014, although they asserted they had

8    noticed changes in B.G.'s behavior while he was enrolled in Holder's class (2009-2011).

9    The mother of M.R. filed a similar claim, which was later settled and is not at issue here.

10    In letters dated June 27, 2014, and July 1, 2014, the District advised the four

11    families that their claims were untimely, and were being returned without further action.

12    The letters included the language prescribed by Government Code § 911.3 – that "[t]he

13    claims . . . are being returned because they were not presented within six months after

14    the event or occurrence as required by law. . . . Because the claims were not presented

15    within the time allowed by law, no action was taken on the claims."  The letters added

16    that plaintiffs' only recourse was to apply without delay to the Contra Costa Solano JPA

17    for leave to present a late claim, per Government Code §§ 911.4-912.2, and § 946.6.

18    None of the families filed an application for leave to present a late claim or took any

19    further action with regard to the claims.  Thus, plaintiffs were barred from asserting any

20    state-law claims in a lawsuit against the District defendants.  Cal. Gov't Code § 945.4.

21    On October 28, 2014, M.G., A.G., B.G, M.R., B.R., and E.R. ("the minor plaintiffs"),

22    filed this action, through their guardians ad litem, against Holder, the District, and the

23    individual Brentwood personnel.  Plaintiffs sought damages, and asserted three federal

24    causes of action – a claim under 42 U.S.C. § 1983 (against Holder and the District

25    personnel); a claim of discrimination under the Americans With Disabilities Act ("ADA")

26    (against the District); and a claim of discrimination under the Rehabilitation Act (against

27    the District).

28    On December 15, 2014, pursuant to stipulation, the six minor plaintiffs through

United States District Court
Northern District of California

3

their guardians ad litem filed a first amended complaint (FAC) joining the parents of the minors as plaintiffs, asserting the same three federal causes of action – a claim under 42 U.S.C. § 1983; a claim of discrimination under the ADA; and a claim of discrimination under the Rehabilitation Act.

The FAC also added nine state- and common-law causes of action. However, plaintiffs did not allege compliance with the CTCA's claims presentation requirement. On January 9, 2015, counsel for the Brentwood defendants sent a meet-and-confer letter to plaintiffs' counsel, advising that the state law claims as pled in the FAC were defective because plaintiffs had not alleged compliance with the CTCA.

On January 22, 2015, the District served plaintiffs with formal Rule 68 offers of settlement, offering each of the six families $250,000 to settle their claims. Each of the families rejected the offer.

On January 30, 2015, plaintiffs filed a second amended complaint (SAC), asserting the same federal and state-law claims as in the FAC, against the same defendants. The SAC included an allegation that all plaintiffs had complied with the claims presentation requirement of the CTCA.

On May 22, 2015, the court granted the Brentwood defendants' motion to dismiss the first (§ 1983) cause of action asserted in the SAC. The dismissal of the § 1983 claim was without leave to amend, although the court indicated that if discovery revealed some information sufficient to support a renewed § 1983 claim, the court might permit amendment.

On October 21, 2015, after all the parent plaintiffs had been deposed, plaintiffs filed a third amended complaint (TAC) pursuant to stipulation. The TAC expanded the Rehabilitation Act claim, and asserted the same ADA and state- and common-law claims as in the SAC. Defendants filed a motion for judgment on the pleadings on the expanded Rehabilitation Act claim, which the court denied on January 21, 2016.

On March 9, 2016, the Brentwood defendants filed a motion for summary judgment as to all claims, and Holder filed a notice of "joinder" in the Brentwood

4

defendants' motion as to the state-law claims (no federal claims having been asserted against her).  In their opposition, notwithstanding that they had continued to litigate the state-law claims since the filing of the FAC in December 2014, plaintiffs conceded that all the state-law claims – other than those asserted by the minor plaintiff M.G. – were "barred either by the statute of limitations or the claim-presentation requirements in California's Government Claims Act."  As for M.G.'s state-law claims, plaintiffs argued that those claims were based on underlying sexual abuse, and were therefore exempt from the claims-presentation requirement by operation of Government Code § 905(m).

On April 26, 2016, following the hearing on defendants' motions, counsel for the Brentwood defendants sent a letter to counsel for plaintiffs, advising that they intended to bring a motion for attorney's fees and costs pursuant to California Code of Civil Procedure § 1038, for work performed on the state-law claims.  Defendants' counsel estimated that their fees would amount to roughly $250,000, and that their costs would be in the area of $35,000.  Defendants' counsel suggested that in lieu of litigating attorney's fees "for the full amount owed," plaintiffs' counsel "consider resolving this particular dispute as it relates to the parents[,]" and asked plaintiffs' counsel to let them know their thoughts.  Plaintiffs' counsel did not respond to this letter.

On April 29, 2016, the court issued an order granting defendants' motion for summary judgment as to the ADA and Rehabilitation Act causes of action, finding that plaintiffs had failed to provide evidence sufficient to create a triable issue as to whether discrimination or denial of benefits occurred by reason of the minor plaintiffs' disabilities. Based on plaintiffs' concession that the state-law claims – except for those asserted by M.G. – were barred by their failure to comply with the CTCA's claims presentation requirement, the court also granted summary judgment as to those claims.  The court deferred ruling on M.G.'s state law claims to allow the parties time to complete supplemental briefing with regard to the applicability of the "sexual abuse" exception as to that one plaintiff.

On May 18, 2016, the Brentwood defendants filed an administrative motion to

1   delay entry of judgment to a date 14 days from the date the court ruled on the remaining

2   claims.  The basis for the motion was that defendants needed additional time to prepare

3   a motion for defense costs and attorney's fees under Code of Civil Procedure § 1038.

4   The court granted the motion on May 27, 2016.

5          On June 30, 2016, having reviewed the supplemental briefing, the court issued an

6   order granting summary judgment as to M.G.'s state-law claims.  On July 12, 2016,

7   counsel for the Brentwood defendants wrote to plaintiffs' counsel, referencing the April

8   26, 2016, letter, and reiterating their intent to file a § 1038 motion for attorney's fees.

9   Counsel stated, "As suggested by . . . Local Rule 54-5, we would like to meet and confer

10  with you with respect to several issues involving the motion for attorney's fees, which will

11  be filed tomorrow, and at the latest, Thursday."  The letter listed the issues, including a

12  new estimate of the amount of fees defendants intended to seek, in the range of

13  $750,000 to $850,000.  Plaintiffs' counsel did not respond to defendants' counsel's letter.

14         On July 13, 2016, the Brentwood defendants filed a motion for attorney's fees

15  under Code of Civil Procedure § 1038.  On July 18, 2016, the court entered judgment in

16  favor of defendants, finding that plaintiffs (with the exception of M.R. and Kathryn

17  Maguire[1]) "take nothing" and that "[d]efendants recover their costs."

18         On July 19, 2016, the Brentwood defendants filed a bill of costs pursuant to

19  Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  On July 25, 2016, Holder

20  filed a bill of costs, also under Rule 54(d) and § 1920.  On July 29, 2016, plaintiffs filed a

21  notice of appeal of the judgment.  On August 2 and 8, 2016, plaintiffs filed objections to

22  the defendants' bills of costs.  On August 16, 2016, Holder filed a motion for attorney's

23  fees under Code of Civil Procedure § 1038.

24         On August 17 and 18, 2016, the clerk taxed the costs of, respectively, the

25  Brentwood defendants and Holder.  On August 24 and 25, 2016, plaintiffs filed motions

26  for review of the clerk's taxation of costs as to the Brentwood defendants and Holder.

27

28  [1]   M.R. and his mother Kathryn Maguire had in the interim entered into a settlement with
    defendants, which the court approved on May 23, 2016.

United States District Court
Northern District of California

**MOTIONS FOR ATTORNEY'S FEES**

A.      Legal Standard

California Code of Civil Procedure § 1038 "provides public entities with a protective remedy for defending against unmeritorious litigation."  Knight v. City of Capitola, 4 Cal. App. 4th 918, 931 (1992) (citation and quotation omitted).  The purpose of § 1038 is to "discourage frivolous lawsuits against public entities by providing public entities with an alternative remedy to a constitutionally proscribed action for malicious prosecution."  Gamble v. L.A. Dept. of Water & Power, 97 Cal. App. 4th 253, 258-59 (2002)

Specifically, § 1038 permits a public entity to recover defense costs, including attorney's fees, from a plaintiff who files a frivolous civil action under the CTCA, after the public entity defendant prevails on a motion for summary judgment, directed verdict, or nonsuit.  Cal. Civ. P. Code § 1038; Kobzoff v. L.A. Cnty. Harbor/UCLA Med. Ctr., 19 Cal. 4th 851, 853 (1998).  Under § 1038, "[i]f the court should determine that the proceeding was not brought in good faith and with reasonable cause," the court "shall render judgment in favor of" the defendant and shall award the defendant "all reasonable and necessary defense costs," including "reasonable attorneys' fees."  Cal. Civ. P. Code § 1038(a), (b), (d); see also Kobzoff, 19 Cal. 4th at 860-62; Carroll v. State of Cal., 217 Cal. App. 3d 134, 140 (1990).

"Reasonable cause" is defined under an objective standard – that is, whether any reasonable attorney would have thought the claim tenable.  Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal., 730 F.3d 1111, 1128 (9th Cir. 2013) (citing Kobzoff, 19 Cal. 4th at 857-58).  "The easy case for lack of reasonable cause is one in which the plaintiff (and thus his or her attorney) can be shown to have been aware that an element of the cause of action was missing."  Kobzoff, 19 Cal. 4th at 858 (citation and quotation omitted).  "Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations]."  Knight, 4 Cal. App. 4th at 932.  As a party's "subjective state of mind will rarely be susceptible of direct proof[,] usually the trial court

1   will be required to infer it from circumstantial evidence." Id.

2       Accordingly, before denying a § 1038 motion, a court must find that the plaintiff

3   brought or maintained the action in the good faith belief in the action's justifiability and

4   with objective reasonable cause. Kobzoff, 19 Cal. 4th at 862; see also Laabs v. City of

5   Victorville, 163 Cal. App. 4th 1242, 1271 (2008). "Section 1038 applies not only to

6   initiation of an action but also to steps to pursue it after it has been filed." Knight, 4 Cal.

7   App. 4th at 931.

8   B.   Defendants' Motions

9       Defendants contend that they are entitled to attorney's fees under Code of Civil

10  Procedure § 1038 for work performed on the state-law claims because plaintiffs filed and

11  litigated those claims in bad faith and without reasonable cause.  As explained above,

12  timely presentation of a CTCA claim is a condition precedent to the claimant's ability to

13  maintain an action against the public entity.  J.J., 223 Cal. App. 4th at 1221.  That is, the

14  failure to timely present a state tort claim to the public entity bars the claimant from

15  asserting that tort claim in a lawsuit against the public entity.  See id.

16      The families of B.R. and E.R. submitted no CTCA claims to the District, and the

17  claims presented by the families of M.G., A.G., B.G., and M.R. were returned by the

18  District as untimely.  None of the plaintiffs sought leave to file a late claim, and none took

19  other action with regard to the administrative claims.

20      The original complaint, filed October 28, 2014, asserted no state-law claims.

21  Plaintiffs added state-law claims in the FAC filed December 15, 2014, but did not allege

22  compliance with the CTCA.  Defendants advised plaintiffs of this deficiency, and on

23  January 30, 2015, plaintiffs filed the SAC, in which they falsely alleged compliance with

24  the claims presentation requirement.  The court granted summary judgment as to the

25  state law claims asserted in the SAC because plaintiffs had failed to comply with the

26  claims presentation requirement of the CTCA.

27      1.   Holder's motion

28      Holder seeks an award of $107,730.90 in fees, for 597.7 hours of work performed

United States District Court
Northern District of California

1    in opposing the state-law claims,[2] at a rate of $200/hr. by lead counsel Mark Davis,

2    $175/hr. by associates Eric Bengston and Adam Davis, and $165/hr. by associate Ian

3    Wilson.  Holder contends that the state-law claims were asserted in bad faith because

4    plaintiffs' counsel knew that failure to comply with the claims presentation requirement of

5    the CTCA was fatal to the those claims in the present action.

6          In opposition, plaintiffs argue that Holder's motion is untimely.  In response, Holder

7    concedes that the motion was not filed until four weeks after entry of judgment, but

8    argues that it was nonetheless timely filed because the requirement in Rule 54(d) that

9    motions for attorney's fees be filed "no later than 14 days after entry of judgment" does

10   not apply where the fees are being sought as sanctions under Federal Rule of Civil

11   Procedure 11.  In addition, she argues, attorney's fees are authorized under 28 U.S.C.

12   § 1927 against plaintiffs' counsel.  She asserts that while it is true that fees under § 1927

13   cannot be imposed without notice, plaintiffs in this case "have been sufficiently notified

14   based on the fact that arguments made in her initial motion and this instant Reply would

15   have been substantially similar."

16         The court finds that the motion must be DENIED as untimely.  A motion under

17   § 1038 must be made "prior to . . . entry of judgment."  Cal. Civ. P. Code § 1038(a).

18   Alternatively, under Rule 54, "[u]nless a statute or court order provides otherwise," a

19   motion for attorney's fees "must . . . be filed no later than 14 days after the entry of

20   judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).

21         Under either standard, Holder's motion was not timely filed.  The court granted

22   defendants' motions for summary judgment on April 29, 2016, except with regard to the

23   state-law claims asserted by minor plaintiff M.G., as to which the court ordered

24   supplemental briefing.  On May 18, 2016, the Brentwood defendants requested that entry

25   of judgment be delayed until 14 days following the court's ruling on M.G.'s state-law

26   claims.  That request was granted on May 27, 2016.  The court issued the order granting

27

28   _____
     [2]  No federal claims were asserted against Holder.

United States District Court
Northern District of California

summary judgment as to M.G.'s claim on June 30, 2016.  The Brentwood defendants

filed their § 1038 motion on July 13, 2016.  The court entered judgment on July 18, 2016.

Holder filed her § 1038 motion on August 16, 2016, which was 28 days after the

entry of judgment.  Thus, in contrast with the Brentwood defendants, Holder did not file

her motion in compliance with either standard, nor did she request any extension or

continuance.

Holder's argument that she is seeking fees as a "sanction" under either Rule 11 or

28 U.S.C. § 1927 is unpersuasive.  While it is true that Holder mentioned Rule 11 in

passing in her moving papers (as part of the discussion of whether the state-law claims

were brought in good faith), the motion for attorney's fees was clearly brought under

§ 1038 only.  Holder did not file a motion for Rule 11 sanctions "made separately from

any other motion," and there is no indication that she complied with Rule 11's "safe

harbor" provision.  See Fed. R. Civ. P. 11(c)(2).  Moreover, she did not even mention

§ 1927 in her moving papers.  The court declines to construe the motion as having been

brought under either Rule 11 or § 1927.

2.      Brentwood defendants' motion

The Brentwood defendants seek to recover fees for defending against frivolous

state law claims, based on plaintiffs' failure to comply with the claims filing requirement of

the CTCA, see Kobzoff, 19 Cal. 4th at 863, and their concession in their opposition to

defendants' motion for summary judgment that the state-law claims were thus without

merit.  Defendants argue that because the state law claims in this case had no basis in

law, they were frivolous, and plaintiffs lacked reasonable cause or good faith to file them.

In addition, defendants assert that bad faith was shown by the fact that plaintiffs

continued to litigate the state-law claims after each of the plaintiff parents testified in

depositions in June-September 2015 that they believed that the alleged abuse had

occurred a year or more before they presented their claims to the District.  Defendants

also note that plaintiffs asserted the same meritless state-law claims in the TAC, which

was filed on October 21, 2015, and also falsely asserted that they had "complied with all

United States District Court
Northern District of California

procedural requirements" of the CTCA.

Defendants contend that their counsel spent 5,040 hours defending this action in its entirety, including the defense of the federal claims, at a total cost of $625,943 to the District. They have deducted time spent on the defense of the federal claims, and the time spent relating to the defense of M.R.'s claims. They contend that what remains is 3,166.8 hours spent defending this action from December 15, 2014 (when plaintiffs filed the FAC in which they first asserted the state-law claims), to June 30, 2016 (the date the court issued the order granting summary judgment as to the claims remaining in the case), for a total of $513,756.50 in fees. In addition, they contend that they incurred expert witness fees in the amount of $64,500, related to the state-law claims of psychological damages. Thus, they seek a total of $578,854.20 in attorney's fees and expert fees.

Generally the time spent by attorneys during the course of a lawsuit is compensable if it was reasonably incurred and is the type of work that would be billed to a paying client. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Courts determine reasonable fees by multiplying the hours worked times a reasonable hourly rate for the services provided. See Serrano v. Priest, 20 Cal. 3d 25, 48 (1977); Fischel v. Equitable Life Assur. Soc. of U.S., 307 F.3d 997, 1006-10 (9th Cir. 2002). This "lodestar" figure is presumptively reasonable. Cunningham v. City of L.A., 879 F.2d 481, 488 (9th Cir. 1988).

Here, defendants argue, all the hours that are proposed for compensation were incurred in relation to the litigation of the state law claims that culminated in the summary judgment motion. They attach declarations from defendants' counsel, setting forth the tasks performed and hours spent. As for the hourly rate, defendants seek $200/hr. for services performed by Louis A. Mr. Leone and Claudia Leed (both of whom have 30 years' experience), and $150/hr. for services performed by Chris Vincent and Seth L. Gordon (who have, respectively, 14 and 8 years' experience as California attorneys). Defendants contend that these rates are well below the current market rates for attorneys

United States District Court
Northern District of California

1    in the Bay Area.  With regard to the expert witness fees, defendants describe those as

2    fees charged by a psychologist and a psychiatrist who are experts in psychological

3    injuries and autism.  They reviewed medical records, and conducted examinations of

4    plaintiffs A.G. and B.R.

5            In opposition, plaintiffs do not oppose the hours or billing rates claimed, and pose

6    no challenge to the calculation of the lodestar.  Instead, they argue that the Brentwood

7    defendants failed to meet and confer prior to the filing of this motion; that the parents of

8    M.G. were excused from complying with the claims presentation requirement by virtue of

9    the alleged sexual abuse; that the parents of A.G. and B.G. brought their state-law claims

10   in good faith, and that those claims were reasonable in light of their "delayed discovery"

11   of the alleged abuse; that the inclusion of claims by the parents of B.R. and E.R. – who

12   submitted no CTCA claims – was "obvious inadvertent error;" and that defendants are

13   improperly attempting to recover for work related to non-frivolous federal claims, as all

14   plaintiffs' claims are based on interrelated facts and it is not possible to separate out the

15   work done on the state claims from that done on the federal claims.  Finally, they assert

16   that even if the court determines that defendants are entitled to fees, the award should be

17   reduced because of plaintiffs' limited finances and inability to pay.

18           The court finds that the Brentwood defendants have established that they are

19   entitled to fees under the § 1038 standard, based on plaintiffs' failure to comply with the

20   claims presentation requirement of the CTCA before filing the state-law claims.  See

21   Kobzoff, 19 Cal. 4th at 863.  The claimed billing rates are below the usual rates charged

22   in the community, and the court finds them to be presumptively reasonable, and finds

23   further that the hours claimed, which are supported by declarations attaching timesheets,

24   are reasonable as well.

25           Plaintiffs' contention that defendants failed to meet and confer is without merit.

26   The evidence shows that defendants made two attempts to meet and confer prior to filing

27   the motion.  Defendants' counsel sent plaintiff's counsel a letter on April 26, 2016, and

28   indicating their intent to seek fees under Code of Civil Procedure § 1038, and asking

1   plaintiffs' counsel for their thoughts on the possibility of resolving the matter informally.

2   Plaintiffs concede that they ignored that letter.  They also did not respond to the

3   subsequent letter sent by defendants' counsel on July 12, 2016.

4        As for MG's state-law claims, plaintiffs did not raise the issue of the "exemption"

5   from the claims-presentation requirement at any time prior to their opposition to

6   defendants' summary judgment motion.  Moreover, contrary to plaintiffs' position in

7   opposing the present motion, the fact that the court requested supplemental briefing does

8   not show that the issue was "close" or that the claim was not frivolous.  In ordering

9   supplemental briefing at the April 13, 2016, hearing, the court stated, "I'm flummoxed that

10  plaintiffs are taking the position that this claim [claim of sexual abuse which provides

11  exemption from claims presentation requirement] is in the case.  Given what I've read, I

12  don't see it at all.  I don't see a claim."  Hearing Tr. (Doc. 208) at 9.

13       As is clear both from the transcript of the hearing and from the order granting

14  summary judgment as to M.G.'s state-law claims (Doc. 236), the supplemental briefing

15  was ordered to allow plaintiffs an opportunity to explain where in the TAC plaintiffs had

16  alleged a claim of childhood sexual abuse pursuant to Code of Civil Procedure § 340.1.

17  Having considered the arguments in the supplemental briefing, the court found that the

18  claim asserted by M.G. in the TAC was not pled as a claim of sexual abuse, and that

19  there was no evidence that defendants were on notice that plaintiffs were asserting a

20  claim of sexual abuse as to M.G.  Accordingly, the court found, M.G. was not excused

21  from complying with the claims presentation requirement.

22       As for plaintiffs' argument that the claims of A.G. and B.G. were reasonable in light

23  of their "delayed discovery" of the claims, and that the inclusion of claims by B.R. and

24  E.R. was "obvious inadvertent error," the court notes that plaintiffs did not previously

25  make these arguments in opposing defendants' motion for summary judgment, and

26  instead, conceded that the state-law claims asserted by the families of A.G., B.G., M.R.,

27  B.R., and E.R. were "barred either by the statute of limitations or the claim-presentation

28  requirements" of the CTCA.  Moreover, when the FAC – which included the state-law

United States District Court
Northern District of California

United States District Court
Northern District of California

1    claims – was filed on December 15, 2014, plaintiffs were fully aware that no CTCA claim

2    had been considered by the District.  Thus, there is no basis for finding that the claims

3    were reasonable at the time they were filed, or that they were filed in good faith.

4          Plaintiffs' assertion that defendants are improperly attempting to recover fees for

5    work related to non-frivolous federal claims is not persuasive.  First, defendants' counsel

6    have filed declarations stating that they deleted any charges for work done on federal

7    claims, and to which they have attached attorney time records.  Plaintiffs have pointed to

8    no specific examples of tasks performed on federal claims and not on state law claims,

9    for which defendants are seeking to recover fees.

10         Second, to the extent that plaintiffs are attempting to assert that the ADA preempts

11   § 1038, plaintiffs' argument is not persuasive.  Parties seeking to invalidate a state law

12   based on preemption "bear the considerable burden of overcoming 'the starting

13   presumption that Congress does not intend to supplant state law.'"  Stengel v. Medtronic,

14   Inc., 704 F.3d 1224, 1227 (9th Cir. 2013).  In the cases cited by the plaintiffs the fees

15   motions were brought pursuant to the California Disabled Persons Act ("CDPA"), Cal.

16   Civ. Code § 55, which the Ninth Circuit held was preempted by the ADA's fees provision.

17   See Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1070-71 (9th Cir. 2015) (citing Hubbard

18   v. SoBreck, LLC, 554 F.3d 742 (2009)).

19         In Hubbard, the Ninth Circuit held that  because a violation of the ADA constitutes

20   a violation of the CDPA, and because under the CDPA, an award of attorney's fees to a

21   prevailing party is not discretionary and an award to a prevailing defendant does not turn

22   on whether the plaintiff's claim was frivolous, the CDPA provision conflicts with the ADA

23   provision, and thus is preempted by the ADA.  Id., 554 F.3d at 745-47.  Here, however,

24   plaintiffs did not assert a claim under the CDPA, and § 1038, the provision under which

25   defendants seek attorney's fees, does not conflict with the ADA.

26         The court does find that plaintiffs' argument that the award should be reduced

27   because of the limited financial resources of the plaintiff families – and that it would thus

28   be unfair to require the plaintiff families to pay the total amount of the fees defendants

14

incurred from defending against the frivolous state law claims – may have some merit. Defendants seek $578,854.20, in fees, which, when divided among five families, comes to $115,770.84 per family.

Nevertheless, there are several problems with plaintiffs' argument.  First, plaintiffs have cited no California authority supporting their assertion that in ruling on a fees motion under Code of Civil Procedure § 1038, the court should consider the plaintiffs' financial situation or their ability to pay the award.  Second, the declarations filed by the plaintiff parents are vague and include no proof of income or other aspects of plaintiffs' financial condition, other than the plaintiffs' self-serving statements.  Third, as defendants have noted, the statements of at least two of the plaintiff parents with regard to the amount of total household income appear to be less than accurate.  In particular, the declarations of two of the mothers of the minor plaintiffs, who claim that they have "no financial ability to reimburse defense costs" and that requiring them to do so would be "an incredible hardship," see Docs. 262-7, 262-5, raise some questions about plaintiffs' ability to pay. Defendants have provided evidence showing family income as to at least those plaintiffs in excess of $160,000 and 170,000, respectively (not counting benefits).

As for defendants' proposal that the court order that the fees be paid by plaintiffs' counsel rather than by plaintiffs, on the theory that the plaintiff families may not have understood the consequences of pursuing state law claims that were barred for failure to comply with the CTCA's claims presentation requirement, and the theory that defendants' counsel should be required to pay the fees as a sanction, the court finds that the motion as filed by defendants does not permit that solution.  The motion was filed as a motion for defense costs under § 1038.  Defendants made no mention in their moving papers of 28 U.S.C. § 1927 or the court's inherent power to impose sanctions.

Accordingly, before determining the amount of defense costs allowable under § 1038, the court will permit plaintiffs to submit additional declarations similar to the affidavits required in this district of plaintiffs seeking to proceed with a lawsuit in forma pauperis, with supporting documentation showing their income and financial resources.

1   In addition, no later than March 17, 2017, plaintiffs may submit supplemental briefing, not

2   to exceed five pages, with citation to California authority supporting their claim that the

3   court is required to consider plaintiffs' financial resources in ruling on a § 1038 motion.  If

4   plaintiffs do submit supplemental briefing and additional declarations by March 17, 2017,

5   the Brentwood defendants will be allowed 14 days thereafter to file a response not to

6   exceed five pages.

7                    **MOTIONS FOR REVIEW OF CLERK'S TAXATION OF COSTS**

8   A.    Legal Standard

9            Following entry of judgment, defendants filed bills of costs pursuant to Federal

10  Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920.  Rule 54(d) contains separate

11  provisions for taxable costs and nontaxable costs.  Rule 54(d)(1) applies to taxable costs,

12  and Rule 54(d)(2) applies to motions for attorney's fees and related nontaxable

13  expenses.

14           Under Rule 54(d)(1), taxable costs are awarded to the prevailing party in civil

15  actions as a matter of course, "[u]nless a federal statute, these rules, or a court order

16  provides otherwise . . . ."  Fed. R. Civ. P. 54(d)(1).  The Local Rules of this court provide

17  additional guidance regarding taxation of costs.  See Civ. L.R. 54-3 ("Standards for

18  Taxing Costs").  To request taxable costs in this district, the prevailing party must file a

19  bill of costs with the clerk, no later than 14 days after entry of judgment or order under

20  which costs may be claimed.  Civ. L.R. 54-1(a).

21           "Costs" recoverable pursuant to Rule 54(d)(1) are limited to the categories listed in

22  28 U.S.C. § 1920.  See Crawford Fitting v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42

23  (1987); see also Taniguchi v. Kan Pac. Saipan, Ltd., 132 S.Ct. 1997, 2006 (2012)

24  ("[T]axable costs are limited by statute.").  Under § 1920, taxable costs include costs in

25  the categories of (1) filing fees and other court fees, (2) fees for transcripts "necessarily

26  obtained for use in the case;" (3) costs of exemplification and copies "necessarily

27  obtained for use in the case," (4) certain fees for printing and witnesses, (5) docket fees

28  under 28 U.S.C. § 1923, and (6) costs of court-appointed experts or compensation for

United States District Court
Northern District of California

interpreters.  See Crawford Fitting, 482 U.S. at 441.  As is evident from § 1920, "[t]axable costs are limited to relatively minor, incidental expenses."  In re Online DVD-Rental Antitrust Litigation, 770 F.3d 914, 926 (9th Cir. 2015) (quoting Taniguchi, 132 S.Ct. at 2006).

Rule 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party."  Ass'n of Mexican-Am. Educators v. State of Cal., 231 F.3d 572, 591 (9th Cir. 2000) ("AMAE").  This presumption is "strong," and places a heavy burden on the non-prevailing party to show why taxable costs are not recoverable.  Miles v. California, 320 F.3d 986, 988 (9th Cir. 2003).  A district court need not give reasons for abiding by the presumption and awarding taxable costs to the prevailing party.  Save Our Valley v. Sound Transit, 335 F.3d 932, 944-45 (9th Cir. 2003) ("The presumption itself provides all the reason a court needs for awarding costs.").

On the other hand, the discretion granted by Rule 54(d)(1) "is solely a power to decline to tax, as costs, the items enumerated in § 1920."  Crawford Fitting, 482 U.S. at 442, quoted in Taniguchi, 132 S.Ct. at 2006.  Thus, a district court must "specify reasons" for refusing to award taxable costs to the prevailing party.  Save Our Valley, 335 F.3d at 945.  The court must "explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs."  Champion Produce, Inc. v. Rudy Robinson Co., 342 F.3d 1016, 1022 (9th Cir. 2003) (internal quotation marks omitted).  "Sufficiently persuasive" reasons for refusing to award taxable costs include the losing party's limited financial resources; misconduct by the prevailing party; the importance and complexity of the issues; the merit of the plaintiff's case; and, in civil rights cases, the chilling effect on future litigants of imposing high costs.  See id. at 1022-23; Save Our Valley, 335 F.3d at 945; AMAE, 231 F.3d at 593.

Rule 54 also provides that a party may move for judicial review of costs taxed by the clerk.  Fed. R. Civ. P. 54(d)(1).  When a party seeks review of the clerk's taxation of costs, the court reviews the clerk's determination de novo.  See Lopez v. S.F. Unified Sch. Dist., 385 F.Supp.2d 981, 1001 (N.D. Cal. 2005); see also U.S. Ethernet

1  Innovations, LLC v. Acer, Inc., 2015 WL 5187505 at *2 (N.D. Cal. Sept. 4, 2015).

2       While § 1920 "define[s] the full extent of a federal court's power to shift litigation

3  costs absent express statutory authority," W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S.

4  83, 86 (1991), Congress has also enacted various fee-shifting statutes which provide

5  separate authorization for a prevailing party in a civil rights action to seek "a reasonable

6  attorney's fee as part of the costs."  See, e.g., 29 U.S.C. § 794a(b) (fees for prevailing

7  party in Rehabilitation Act claim); 42 U.S.C. § 1988 (fees for prevailing party in claims

8  brought under, inter alia, 42 U.S.C. § 1983); 42 U.S.C. § 2000-e5(k) (fees for prevailing

9  party in claims brought under Title VII of the 1964 Civil Rights Act); see also 42 U.S.C.

10  § 12205 (ADA provides authorization for the prevailing party to seek "a reasonable

11  attorney's fee, including litigation expenses, and costs").

12       These fee-shifting statutes enable a prevailing party to recover nontaxable "out-of-

13  pocket" expenses that "would normally be charged to a fee-paying client," but which are

14  not authorized under § 1920.  Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994); see

15  also Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 579-82 (9th Cir. 2010).  The

16  Supreme Court has interpreted these fee-shifting provisions "consistently" across

17  statutes.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,

18  532 U.S. 598, 602-03 & n.4 (2001).

19       Under Rule 54(d)(2), which is not at issue in the present case, the prevailing party

20  may request attorney's fees and related nontaxable expenses that are not taxable as

21  costs under § 1920.  See Fed. R. Civ. P. 54(d)(2) & Advisory Comm. Note to 1993

22  Amendments ("This new paragraph establishes a procedure for presenting claims for

23  attorney's fees, whether or not denominated as 'costs.'  It applies also to requests for

24  reimbursement of expenses, not taxable as costs, when recoverable under governing law

25  incident to the award of fees.")

26  B.    Plaintiffs' Motions

27       On July 19, 2016, the Brentwood defendants filed a bill of costs, seeking a total of

28  $89,200.95 in taxable costs from all plaintiffs except M.R. and Katherine Maguire (Doc.

United States District Court
Northern District of California

242).  On August 17, 2016, the clerk taxed costs in favor of the Brentwood defendants in the amount of $64,695.05 (Doc. 264).  Holder filed a bill of costs on July 25, 2016, seeking a total of $2,838.56 in taxable costs from all plaintiffs except M.R. and Katherine Maguire (Doc. 251).  On  August 18, 2016, the clerk taxed costs in favor of Holder in the amount of $1,634.03 (Doc. 265).

Plaintiffs make four arguments in their motions for review of the clerk's taxation of costs.  First, they assert that under Brown v. Lucky Stores, Inc., 246 F.3d 1182 (9th Cir. 2001), the ADA – rather than 28 U.S.C. § 1920 and Rule 54 – controls entitlement to costs in this case; and that under the Brown court's application of the standard articulated in Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), defendants are not entitled to recover any costs because the ADA claims were not "frivolous."  Second, in a related argument, plaintiffs contend that defendants have not properly segregated the costs incurred on account of the frivolous state law claims from the costs incurred from the non-frivolous federal claims, and that under Harris v. Maricopa Cnty. Superior Ct., 631 F.3d 963 (9th Cir. 2011), a simple pro-rata allocation of costs is impermissible. Third, plaintiffs contend that they should be excused from paying the costs because they are not financially able to do so.  Finally, plaintiffs assert that the majority of the costs claimed by defendants are not available under § 1920.

### 1.    Defendants' entitlement to costs

Plaintiffs assert that because they alleged claims under the ADA, defendants are not entitled to costs unless they can show that the action was "frivolous, unreasonable, or without foundation."  Relying on the Ninth Circuit's decision in Brown, they contend that the ADA's fee-shifting provision, 29 U.S.C. § 12205, which includes "costs," prevails over § 1920, Rule 54, and Civil Local Rule 54.

In Brown, the plaintiff was terminated from her employment, and filed suit against her employer and her supervisor, alleging claims under the ADA and Rehabilitation Act, and also under state law.  The district court granted summary judgment for defendants on the disability claims, finding no evidence that plaintiff was terminated because of her

United States District Court
Northern District of California

disability or as to the alleged failure to accommodate.  <u>Brown</u>, 246 F.3d at 1186.  The court declined to exercise jurisdiction over the remaining state-law claims, and dismissed them without prejudice.  <u>Id.</u>  In the judgment, entered the same day, the court directed that "[e]ach party shall bear his or her own costs."  According to the clerk's docket for the case, no bill of taxable costs was filed, and no motion for fees and/or costs was filed.

On appeal, the Ninth Circuit affirmed the grant of summary judgment, and the dismissal of the state-law claims without prejudice, but held that the district court's failure to explain its denial of costs required remand.  <u>Id.</u> at 1185-90.  With regard to the costs, the Ninth Circuit cited Rule 54(d)(1), which at that time allowed costs other than attorney's fees "'as of course to the prevailing party unless the court otherwise directs,' so long as the statute at issue or the federal rules do not expressly provide for fees."  <u>Id.</u> The court added that "[i]n order to permit meaningful appellate review, we require district courts to provide an explanation when they deny costs to a prevailing party under Rule 54."  <u>Id.</u> (citing <u>AMAE</u>, 231 F.3d at 591-92).

The court noted that under <u>Christiansburg</u>, while a prevailing plaintiff in a case brought under Title VII of the 1964 Civil Rights Act is ordinarily entitled to attorney's fees unless special circumstances would make such an award unjust, a prevailing defendant is to be awarded such fees only if the plaintiff's claim was "frivolous, unreasonable, or groundless" or if "the plaintiff continued to litigate after it clearly became so."  <u>Id.</u> at 1190 (citing <u>Christiansburg</u>, 434 U.S. at 421-22).

Further, the court held that because the fee-shifting provision in the ADA governs both fees <u>and</u> costs – "§ 12205 makes fees and costs parallel" – the costs analysis in the case before it was controlled by § 12205 – not by Rule 54(d), and that the <u>Christiansburg</u> test thus applies to an award of costs to a prevailing defendant under the ADA.  <u>Id.</u>  The court remanded the case for reconsideration of costs, directing that the district court "explain its decision whether or not to award costs under the <u>Christiansburg</u> standard[,]" and that for costs attributable to other claims, that it "explain the rationale for its denial under the standard enunciated in <u>AMAE</u>."  <u>Id.</u>

United States District Court
Northern District of California

2.      Allocation of costs

In a related argument, plaintiff contends that under <u>Harris</u>, the pro-rata allocation of fees in civil rights cases is improper, and that under <u>Christiansburg</u>, this rule extends to requests for costs in ADA cases.  In <u>Harris</u>, a terminated employee filed suit for violation of rights under Title VII and 42 U.S.C. § 1983, and also asserted state statutory and common-law claims.  The district court granted defendants' motion to dismiss certain claims and granted defendants' motion for summary judgment on the remaining claims. Defendants filed a motion for attorney's fees under 42 U.S.C. § 2000e-5(k) and § 1988, plus nontaxable expenses.  The district court awarded no fees on the frivolous claims, but did award fees on the other claims, allocated on a pro-rata basis.

The Ninth Circuit vacated and remanded, holding that in civil rights cases, pro-rata allocation of attorney's fees between claims for which fees are appropriate and claims for which fees are not appropriate is impermissible, and that a defendant bears the burden of establishing that the fees it is seeking were incurred solely by virtue of the need to defend against the frivolous claims.  <u>See id.</u>, 631 F.3d at 971-72.  In a separate section of the opinion, the court held that because <u>nontaxable</u> litigation expenses are recoverable by a prevailing defendant in a civil rights case only as part of a fees award, such expenses are recoverable only with respect to non-frivolous claims.  <u>Id.</u> at 979-80.

Plaintiffs cite <u>Harris</u> for the proposition that a prevailing defendant has the burden of establishing that its attorney "would not have performed the work involved except for the need to defend against the frivolous claims (and thus would not have done the work in whole or in part in order to defend against the non-frivolous claims)."  <u>Id.</u> at 972. Moreover, plaintiffs assert, where a plaintiff "seeks relief for violation of his civil rights under various legal theories based on essentially the same acts, and a number of his claims are not frivolous, the burden on the defendant to establish that fees are attributable solely to the frivolous claims is from a practical standpoint extremely difficult to carry."  <u>Id.</u>

Plaintiffs contend that defendants have included "fees and costs" which they would

1    not have incurred even if plaintiffs had not brought the state law claims, such as "work

2    and costs related to the depositions of [p]laintiffs and [d]efendants, subpoena fees, and

3    printing and copying costs."  Thus, plaintiffs argue, defendants should be awarded no

4    taxable costs.

5            Plaintiffs cite four district court decisions which they claim support their position –

6    Ramsey v. Rowe, 2014 WL 232269 (D. Ariz. Jan. 22, 2014) (prevailing defendants in a

7    § 1983 prison conditions case requested attorney's fees under § 1988; the court applied

8    Christiansburg and Harris to deny fees because defendants failed to separate work done

9    on frivolous claims from work done on non-frivolous claims); Downs v. Nevada Taxicab

10   Auth., 2011 WL 6148622 (D. Nev. Dec. 9, 2011) (prevailing defendant requested

11   attorney's fees under § 1988 based on the frivolous nature of § 1983 claim; the court

12   applied Harris, and denied fees because defendant failed to separate out the work done

13   on the frivolous § 1983 claim from that done on state-law claims); Newfarmer-Fletcher v.

14   Cnty. of Sierra, 2012 WL 5289374 (E.D. Cal. Oct. 23, 2012) (prevailing defendants

15   sought attorney's fees under § 1988 for frivolous claims; the court denied fees based on

16   Harris because the state-law claims were not clearly frivolous, and the defendant failed to

17   separate out work done on frivolous claims from that done on non-frivolous claims);

18   Ooley v. Citrus Heights Police Dep't, 2013 WL 1281845 (E.D. Cal. Mar. 26, 2013)

19   (prevailing defendants requested attorney's fees under § 1988, asserting that all plaintiff's

20   claims were frivolous; the court denied the motion under Harris and Fox v. Vice, 563 U.S.

21   826 (2011), finding that given numerous amendments to the complaint and numerous

22   motions to dismiss, all claims were not clearly frivolous, and defendant failed to

23   segregate work done on frivolous claims from work on non-frivolous claims).

24           In opposition, defendants argue that even if they are not entitled to costs under the

25   ADA, they are not barred from recovery of costs on plaintiffs' other claims.  Defendants

26   cite Estate of Martin v. Cal. Dept. V.A., 560 F.3d 1042 (9th Cir. 2009) – a case decided

27   eight years after Brown – where the defendants prevailed on claims under the ADA and

28   the Rehabilitation Act.  The court held that the defendant was not entitled to costs under

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the ADA because the claim was not frivolous, but that an award of costs was appropriate

2    under the Rehabilitation Act.  Id. at 1052-53 (Christiansburg standard does not govern

3    costs under § 504 of the Rehabilitation Act, as the costs provision of the Rehabilitation

4    Act is more similar to the costs provision in Title VII than it is to the costs provision in the

5    ADA).

6            In response, plaintiffs argue that in relying on Martin, defendants have ignored the

7    Supreme Court's subsequent holding in Fox v. Vice, that when a case involves both

8    frivolous and non-frivolous claims, a prevailing defendant is entitled to receive only the

9    portion of his fees that he would not have paid but for the frivolous claim.  See id., 563

10   U.S. at 840.  Plaintiffs also contend that the portion of Martin that permitted prevailing

11   defendants to recover costs for the Rehabilitation Act claims is "inconsistent" with the

12   Ninth Circuit's subsequent decision in Harris.  Plaintiffs concede that the Martin court

13   awarded costs based on a rough estimate that the non-ADA claims accounted for about

14   half the case, Martin, 560 F.3d at 1053, but argue that in Harris, the court held that a pro-

15   rata allocation of fees "based solely on the number of claims" is impermissible, "for

16   reasons that go to the heart of our civil rights policy."  See Harris, 631 F.3d at 971.

17           Plaintiffs' arguments are clearly inapplicable to the question of the taxation of

18   Holder's costs, as no ADA claim (or any federal claim) was asserted against her.  With

19   regard to the Brentwood defendants, plaintiffs concede that Christianson does not apply

20   to recovery of costs under the Rehabilitation Act, see Martin, 560 F.3d at 1052-53, but

21   argue that under Harris, prevailing defendants are not permitted to make a pro-rata

22   allocation of the costs between frivolous and non-frivolous claims. Thus, plaintiff argues,

23   defendants should not be allowed to recoup any taxable costs.

24           The court is not persuaded that Harris should be extended to the determination of

25   taxable costs.  First, Harris did not overrule Martin, and the decision concerned the

26   allocation of fees, not taxable costs.  The plaintiff in Harris sought attorney's fees under

27   three civil rights statutes – an Arizona state statute, Title VII, and § 1988.  The Ninth

28   Circuit noted that fee awards to prevailing defendants under all three of the statutes were

United States District Court
Northern District of California

governed by <u>Christiansburg</u>.  <u>Id.</u>, at 975-76.  The court found it improper to allocate fees on a pro-rata basis, between claims for which a fee award was appropriate and claims for which such an award was not appropriate, based solely on the number of claims.  <u>Id.</u> at 971.

However, the <u>Harris</u> court said nothing about taxable costs, and addressed nontaxable costs or expenses in a separate section of the opinion, where it held only that because such expenses are part of an attorney's fees award, they are recoverable only on the terms on which attorney's fees are recoverable.  <u>Id.</u> at 980.  Similarly, in <u>Fox v. Vice</u>, the prevailing defendant sought attorney's fees under § 1988, and the issue before the Court was the allocation of attorney's fees in a lawsuit having both frivolous and non-frivolous claims.  <u>Id.</u>, 563 U.S. at 829.  The Court did not address the allocation of taxable costs.  In the court's view, neither <u>Harris</u> nor <u>Fox</u> supports a finding that a pro-rata allocation of taxable costs is improper.

Second, while it is theoretically possible to review attorney time records and determine how to allocate fees for work performed on particular claims, taxable costs do not lend themselves to the same analysis.  Taxable costs – filing fees, transcripts, costs of exemplification and copies, printing and witness fees, and costs of experts and interpreters – are "limited to relatively minor, incidental expenses," <u>Taniguchi</u>, 132 S.Ct. at 2006, and generally relate to the case as a whole and not to particular causes of action.

Indeed, in <u>Martin</u>, the district court followed <u>Brown</u> in holding that the prevailing defendants were not entitled to costs under the ADA because the claim was not clearly frivolous.  However, because the remaining three primary claims accounted for about half the case, the court founds that an award of 50% of the requested amount was warranted.  <u>See Martin</u>, 560 F.3d at 1053.  The Ninth Circuit approved the district court's calculation of costs.  <u>Id.</u> ("Having presided over the case from its inception, the court knew the relative proportion of the total litigation that each of the primary claims represented.  The court's explanation, although not extensive, was sufficient and was reasonable.").

United States District Court
Northern District of California

1          3.      Plaintiffs' financial resources

2          Plaintiffs argue that the court should not assess costs against them because of

3    their limited financial resources.  Of the factors cited by the Ninth Circuit as being

4    "sufficiently persuasive" reasons to refuse to award taxable costs, see Save Our Valley,

5    335 F.3d at 945; AMAE, 231 F.3d at 593, the only factor plaintiffs have addressed is their

6    financial resources.

7          Plaintiffs attach declarations from the plaintiff parents and/or guardians ad litem of

8    minor plaintiffs E.R., A.G., B.G., M.G. and B.R. in support of their contention that they

9    cannot afford to pay the taxable costs.  In general, the declarants state that they have "no

10   financial ability to reimburse defense costs" and that requiring them to do so "would be an

11   incredible hardship," and that their gross family income ranges from $0 to $136,000 per

12   year.  See Docs 257-2, 257-3, 257-4, 257-5, 257-6, 257-7.  Apart from the brief

13   statements in these declarations, none of the plaintiffs provides any documentation to

14   support their claims that they lack the resources to pay the costs, and/or that it would be

15   an "incredible hardship" for them to pay the costs.  .

16         In opposition, defendants contend that the statements in the declarations are

17   misleading (at least as to the household income of two of the plaintiffs), and that plaintiffs

18   have thus not demonstrated an inability to pay.

19         In general, plaintiffs have not met their burden of overcoming the presumption in

20   favor of taxing costs.  None of the plaintiffs proceeded pro se, and none claims to be

21   indigent.  Moreover, they have provided no convincing proof (apart from the conclusory

22   statements in the declarations) of exactly what their financial resources are or whether

23   their financial resources are so limited that taxing costs against them would leave them

24   indigent or have a chilling effect on future civil rights litigation.  See Glauser v. GroupMe.,

25   Inc., 2015 WL 2157342, at *3 (N.D. Cal. May 7, 2015).  Moreover, as noted above,

26   certain plaintiffs appear to have misrepresented their financial resources.

27         This court does not bear the burden of justifying routine awards of costs against

28   losing parties in civil rights cases.  See Save Our Valley, 335 F.3d at 946.  While the

court must specify its reasons for refusing to tax costs to the losing party, it need not specify the reason for its decision to abide the presumption and tax costs to the losing party.  Id. at 945.  Overall, the court finds no basis upon which to depart from the presumption in favor of awarding costs.

        3.       Challenges to amount of costs claimed

               a.       Brentwood defendants

As noted above, the Brentwood defendants submitted a cost bill in the amount of $89,200.95 (Doc. 242).  They requested reimbursement for costs in four categories – (a) $22,674.73 for fees for service of summons and subpoena ("service fees"); (b) $42,871.97 for fees for printed or electronically recorded transcripts necessarily obtained for use in the case ("reporters' transcripts and videographer"); (c) $20,243.50 for printing fees and disbursements ("document copying and discovery support"); and (d) $3,410.75 for costs of copies of materials necessarily obtained for use in the case ("photocopies").

The clerk reduced the allowed costs to a total of $64,695.05, as follows.  First, the $22,674.73 requested for service fees was reduced to $19,054.84, with $3,619.89 disallowed as outside the ambit of L.R. 54-3(a)(2).  Second, the $42,871.97 requested for reporters' transcripts and videographer was reduced to $33,901.65, with $8,970.32 disallowed as outside the ambit of L.R. 54-3(c)(1).  Third, the $20,243.50 requested for document copying and discovery support was reduced to $11,738.56, with $8,504.94 disallowed as outside the ambit of 28 U.S.C. § 1920(4) and L.R. 54-3(d)(2).  Fourth, the $3,410.75 requested for photocopies was denied altogether, as outside the ambit of 28 U.S.C. § 1920(4) and L.R. 54-3(d)(3).

In their motion, plaintiffs object to the amounts taxed for service fees, reporters' transcripts and videographer fees, and copying and discovery support.  The court has reviewed the bill of costs and supporting documentation, and has reviewed the clerk's taxation of costs, and finds that the clerk made appropriate deductions.  The court approves the amounts taxed, with two exceptions.  First, the court finds that defendants are not entitled to fees for service of document subpoenas and production of documents

26

pursuant to those subpoenas.  Second, as explained above, the court will deduct 25% from the final total of taxed costs to account for the ADA claim.

With regard to the service fees, plaintiffs' arguments are not entirely persuasive. Plaintiffs claim that the Brentwood defendants listed $18,872.27 of fees "unrelated to service of subpoenas," and that they "claimed costs relating to that are not taxable under Rule 54 . . . or under Local Rule 54-3," such as fees for "rush delivery, shipping, and 'certification of records' associated with retrieval of plaintiffs' medical, education, and employment records unrecoverable under 54-3."  They follow this with 7 1/2 pages of charts listing invoices by invoice date, invoice number, and amount of "total deduction," with the sole explanation for the "deduction" being "non-allowable fees."

For each invoice listed on their chart, they do not say what the total amount of each invoice was, what it was for, what portion was objectionable, and why the fees were "non-allowable."  The actual invoices were attached to the Brentwood defendants' bill of costs, but there is no easy way to match up the entries in plaintiffs' charts with the invoices.  In short, the court is unable to make any sense of plaintiff's submission.

However, the court finds that fees for service of document subpoenas are not taxable costs.   The applicable local rule – Civil L.R. 54-3(a)(2) – appears to contemplate fees for service of process but not for service of deposition subpoenas or other court documents.  The invoices attached in support of this claim are all from "Quest Discovery Services," and most appear to be for document and/or records subpoenas – medical, hospital, and therapy records; police records; and records from other school districts. The clerk disallowed those portions of the invoices that included charges for "shipping and handling," for "rush" service charges, and for "certificates of no records" and "certificates of no x-ray films."  That leaves a total of $19,054.84 for "fees for service of summons and subpoena."

Specifically, the clerk allowed costs on various invoices for items such as "basic charge" (as distinct from "service of subpoena"); for "subpoena preparation" (as distinct from "service of subpoena"); for "special handling;" for "basic with records on CD;" for

1   copies and CDs on site (invoiced as part of "subpoena service, not as "copies"); for

2   "photostats;" for "color photostats;" for "skip tracing;" for "pick up of records/ documents;"

3   for "extensive followup;" for "additional notice(s);" for "pickup of non-paper exhibits;" for

4   "x-ray breakdown for approval;" for "fees paid per Evidence Code 1563;" for "minimum

5   page charge;" for "reprint of paperwork;" for "retrieval service charge;" for "processing/

6   inventory of x-rays;" for "locate address;" and for "attempted service/bad address."

7       The court finds that the entire $19,054.84 should be disallowed.  Judges in this

8   district have found that costs incurred in connection with service of document subpoenas

9   are not taxable.  In Jefferson v. City of Fremont, 2015 WL 1264703 at *1 n.1 (N.D. Cal.

10  Mar. 19, 2015), Judge Chen denied taxation of costs, primarily because the losing party

11  was a pro se plaintiff who was involved in a bankruptcy and who had limited financial

12  resources, but also noted that "there is substantial doubt as to whether costs connected

13  with deposition subpoenas (in contrast to costs of service of process by the Marshal) are

14  recoverable under this Court's local rules.

15      In Velasquez v. City of Santa Clara, 2014 WL 4748429 at *3 (N.D. Cal. Sept. 24,

16  2014), Judge Grewal agreed with the losing party's request for a reduction in costs

17  associated with service of subpoenas, finding that Local Rule 54-3(a)(2) "contemplates

18  fees for service of process but not for service of deposition subpoenas or other court

19  documents," and noting that "[t]he subpoenas at issue in the bill of costs were related to

20  production of documents or witnesses" and were not associated with service of process.

21      In Ibrahim v. D.H.S., 2014 WL 1493541 at *3 (N.D. Cal. Apr. 16, 2014), Judge

22  Alsop denied costs in the category of "service of summons and subpoena," for "invoices

23  for obtaining records from the 'American Medical Response' and 'San Francisco Fire

24  Department.'"  The court noted only that "[t]hese are not taxable" and that counsel had

25  provided "no supporting authority."

26      In Carlson v. Century Sur. Co., 2012 WL 2602732 at *2-3 (N.D. Cal. July 5, 2012),

27  Judge Illston found that because Local Rule 54-3(a)(2) provides for fees for "filing and

28  service of process," costs for service of deposition subpoenas were not taxable costs,

United States District Court
Northern District of California

28

United States District Court
Northern District of California

1   noting that the situation might be different if the local rule provided for "fees for service of

2   process and service of subpoenas by someone other than the marshal," as does a local

3   rule in the District of Hawaii.

4        The court is persuaded by the reasoning of the judges in the above-described

5   cases, and disallows the $19,054.84 taxed for "fees for service of summons and

6   subpoena."

7                 b.      Holder

8        Holder submitted a cost bill in the amount of $2,838.59, seeking reimbursement for

9   costs in only one category – fees for printed or electronically recorded transcripts

10  necessarily obtained for use in the case (or "reporters transcripts and videographer")

11  (Doc. 251).  However, also included in the category of "transcripts" was $238.94 for five

12  "records subpoenas," although these appear to be for copies of records that were

13  subpoenaed, not for service of records subpoenas.  Separately, the costs requested for

14  "transcripts" comes to $2,599.65.

15       The clerk reduced the total $2,838.59 amount to $1,634.03, disallowing $1,204.96

16  as outside the ambit of L.R. 54-3(c)(1), and the stipulated dismissal of plaintiff M.R. and

17  stipulation of the parties to bear their own costs (Doc. 235).  Of that, $1,507.55 was

18  allowed for fees for recorded transcripts, and $126.48 was allowed for "records

19  subpoena."  Three of the invoices for "records subpoena" state that the records are for

20  plaintiff M.R.  The clerk disallowed those three charges, for a total of $112.46, based on

21  the stipulated dismissal of M.R. and the stipulation of the parties to bear their own costs.

22  That left two charges for a total of $126.48.  Of the fees for recorded transcripts, the clerk

23  deducted $1,092.10 from the total of $2599.65.  A total of $1,204.56 was disallowed for

24  transcripts.

25       The court has reviewed the cost bill and supporting documentation, and finds the

26  deductions appropriate.  Accordingly, the court approves the amount taxed in favor of

27  Holder.

28

United States District Court
Northern District of California

1

**CONCLUSION**

In accordance with the foregoing, the court DENIES Holder's motion for attorney's fees, and GRANTS the Brentwood defendants' motion for attorney's fees, but DEFERS the determination of the amount to be awarded pending plaintiffs' submission of further argument and documentation as set forth above.  Plaintiffs' supplemental briefing shall not include any argument regarding defendants' entitlement to fees under § 1038.

Plaintiffs' motion for review of the clerk's taxation of costs is DENIED.  The total amount of the costs awarded to Holder is $1,634.03.

Plaintiffs' motion for review of the clerk's taxation of costs as to the Brentwood defendants is GRANTED in part and DENIED in part.  With the exception of the taxation of costs for service of document subpoenas and related expenses, the court approves the taxation of costs as to the Brentwood defendants, with a deduction of $19,054.84 from the total $64,695.05 taxed by the clerk, which leaves $45,640.21 in taxable costs. From that, the court deducts 25% (or $11,410.05) for costs allocated to the ADA claim. Thus, the total amount of the costs awarded to the Brentwood defendants is $34,230.09.

As for the AMAE factors, the only one discussed by the parties is the factor of the plaintiffs' financial resources.  While it is true that the District has greater financial resources than the plaintiffs, it is also true that the District must provide services for many other families and children, including special-needs children.  Here, the court finds that plaintiffs have not established that the amount of costs per family is excessive, or that they are unable to pay these costs.

**IT IS SO ORDERED.**

Dated:  February 24, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge